## Henry Harper *v.* Lewis Reno *et al.*

A purchaser in possession is not permitted, except under peculiar circumstances, to buy in an out-standing incumbrance or title, and oppose it to the title of his vendor under whom he entered. A court of equity will reimburse a purchaser in money advanced in the extinguishment of incumbrances by way of perfecting his title; but will not permit him to array such incumbrance in hostility to the title of his vendor.

No principle is better founded in equity than that a purchaser who buys up or discharges an incumbrance can only claim against his vendor the amount actually paid, because that would be the measure of damages in an action upon the covenants in his deed.

A deed unduly registered for the want of a valid acknowledgement, is not notice; but such a deed creates an equity, which will be inforced, unless notice of that equity is fully and positively denied.

A purchaser who rests his defence in equity upon the fact of being a *bona fide* purchaser without notice, must deny notice fully, positively and precisely, although notice be not charged on the other side, and must also deny all knowledge of the facts charged from which notice may be inferred.

When a subsequent purchaser stated that he "had no actual knowledge," nor any "detailed information," relative to a prior lien, this denial of notice was held insufficient.

It is not necessary that a subsequent purchaser should have actual knowledge or detailed information in order to charge him with notice. If he has such information as gave notice of the substance of the transaction, or as would have led him to actual knowledge or detailed information on the subject, it was quite sufficient.

Whatever is sufficient to put a party upon inquiry amounts to notice.

If a purchaser, without notice at the time of purchase, receive notice before he makes a payment of the purchase money, the land in his hands becomes bound from that time by the prior equitable lien, to the extent at least of the purchase money that then remains unpaid.

This bill charges that about the 13th of August, 1835, one Lewis Reno sold lot No. 8 in the city of Jackson, to E. B. and S. F. Noble; that to secure the payment of part of the purchase money, Reno took two bills single on the purchasers, dated Jackson, June 24, 1835, the one for three thousand five hundred dol-

lars, payable on or before the first day of January, 1837, the other for three thousand six hundred and forty dollars, payable on or before the first day of July, 1837, and at the same time further to secure the payment of the bills single, said Reno took a deed of trust on the same lot sold by him to the Nobles, which deed was made by said Nobles to one Thomas Rainey as trustee to secure the payment of said bills single. This deed was duly registered on the tenth day of November, A. D. 1835. After the registration of the deed, and during the month of November, 1835, Reno, for a valuable consideration, sold and delivered said bills single and deed of trust to one Henry Harper, who is the complainant in this bill. The terms of the deed of trust were, that on the failure of the payment of either of the bills single at maturity, the trustee, within sixty days thereafter, at the request of said Reno, should proceed to advertise said property for sale, by giving forty days' notice, in such newspaper as might then be printed in Jackson, of the time and place of sale, and sell so much of said lot as might be necessary to discharge such sum as might be due at the time of such sale. The first of said bills single is due; more than sixty days have transpired since it became due, the same remains unpaid, and Rainey the trustee refuses to execute the deed of trust, and Reno refuses to request or compel him to do so. The pretence for this refusal is, that Harper cannot have execution of the deed of trust, because there are judgments against the Nobles older than the deed, which are liens on the lot covered by the deed of trust. At the March term, 1835, of the circuit court of Hinds county, judgments were rendered against Reno for the aggregate sum of nine hundred dollars, in favor of different parties. On these judgments executions were issued, and on the first Monday in October, 1836, the sheriff sold said lot No. 8 to one Nathan Ewing, who was the bar-keeper of the said Nobles, for the sum of seven thousand five hundred and twenty-five dollars, as the agent of the Nobles, who furnished him the money to pay the sheriff, and the benefit of this purchase enured to them. In the mean time one John L. Johnson bought the lot of the Nobles, and by their direction the sheriff made a deed of the lot to Johnson on the payment by the Nobles of nine hundred dollars to satisfy the executions against Reno. The bill charges, that although the sheriff's deed was made to Johnson,

the purchase money was paid by the Nobles and perfected their title from Reno. It also prays that the trustee be compelled to execute the deed of trust.

The Nobles, in their joint answer, admit all the material allegations of the bill, except that they denn that Ewing acted as their agent in the purchase of the lot at sheriff's sale. In reply to this allegation of the bill, they say that Ewing, "though not from any act, suggestion or procurement of said Reno or of the complain- ant, allowed respondents the benefit of his purchase, on the condition that they should refund to him the money he paid to the sheriff on said execution and sale. To enable that offer to be effected, the sheriff gave a short time upon the residue of Ewing's bid, (some three hundred dollars having been paid down,) and respondents fortunately succeeded in obtaining the fund required to reimburse said Ewing and to redeem the said lot. The deed of the sheriff was requested to be made to the defendant Johnson, to whom respondents sold said lot."

The defendant Johnson, in his answer, says, "that in regard to the sale of lot eight in the town of Jackson, from said Reno to said E. B. and S. F. Noble, the notes given for the price, the deed to secure the notes, the subsequent assignment of those notes to complainant, and the delivery to him of said deed, as also any consideration paid and secured by him as stated in said bill, this respondent has never had any actual knowledge, nor indeed any information, other than that the said E. B. and S. F. Noble, or one of them, informed him that they had purchased the same from said Reno; and about January, 1837, he heard complainant speak of his claim: certain he is he never had earlier or more specific information upon those matters, nor indeed to the best of his memory and belief any more detailed information, until seeing a copy of said bill." Johnson also states that the Nobles procured the sheriff to make a deed to him, and also gave him their own deed. He insists that his title is good, and files, as exhibits, the judgments and executions under which said sheriff's sale was made.

William C. Demoss, the sheriff, who made the sale, who was also made a defendant to the bill, states that he had executions against Reno to the amount of nine hundred dollars; that he levied said executions on said lot No. 8, mentioned in complain-

ant's bill, and sold same to one N. Ewing, who bid the sum of seven thousand five hundred dollars, who paid about three hundred dollars down; that afterwards the Nobles paid the balance of the executions, with the costs of sale, &c. and being in all about nine hundred dollars, and claimed the balance of the bid made by Ewing as their own. At the request of Ewing he made the deed to Johnson.

The acknowledgment of the deed of trust made by the Nobles to Rainey, and which this bill seeks to enforce, is as follows:

" State of Mississippi, Hinds county.

" Jackson, October, 28, 1835.

" This day personally appeared [before the subscriber, a justice of the peace for Hinds county, the above signed S. F. Noble, who acknowledged the above signature of his name to the foregoing deed of trust to be his free act and deed.

" JOHN WIDGERY, J. P."

" State of Mississippi, Hinds county.

" Jackson, October 2S, 1835.

" This day appeared before me, Charles W. Webber, one of the subscribing witnesses to the foregoing deed of trust, and being duly sworn, says that he saw the above signature of E. B. Noble, and also saw the said deed of trust signed, sealed and delivered.

" JOHN WIDGERY, J. P."

WILLIAM YERGER for complainant.

The only point to which I shall call the attention of the court in my brief, is, whether or not Johnson is a purchaser for value. If so, and that fact is established, the complainants have no further equity against him. If not, I believe it is admitted that the property is liable to the trust.

First. It is necessary, when a party relies upon the fact that he is a purchaser for value, without notice, to prove it. It is said that the answer of Johnson is proof of this fact—because, as alleged, an answer in reply to allegations in the bill is to be taken as true, unless controverted. This rule we do not deny; but we say that such is not the fact in this case. It is charged in the bill that Rainey, to avoid performance of his trust, asserted that Johnson had purchased of the Nobles, &c. It does not charge that

Johnson did or did not so purchase. What, then, would have constituted a reply to that charge? Most certainly, an answer saying that Rainey did not assert these things. Instead of that, the defendants come in and say they are purchasers for value, &c. a statement not responsive to any allegation in the bill, because the bill does not charge that they are not purchasers for value. The case cited in 4 Paige, 370, was of this kind. The bill charged that the defendants were not purchasers for value. The answer said they were. In this case the answer was directly responsive, and therefore proof. The difference between the cases will be seen by reference to them. The rule is laid down in Virginia, that an answer which asserts a right affirmatively, (though, in form, responsive to a question put in the bill,) in opposition to the plaintiff's demand, is not evidence; but the defendant is bound to establish his assertion by independent testimony. 1 Munf. 393, 395; 1 Wash. 224.

These cases, the court will perceive, are directly in point, and decisive of it. The answer, then, not being responsive to any allegation in the bill, but setting up matter in avoidance, must be proved to entitle the party to any benefit under it.

D. SHELTON, PRYOR LEA and JOHN B. FORESTER for complainants.

On the 13th of August, 1835, Reno sold lot No. 8 in square 1 south, in Jackson, to E. B. & S. F. Noble, who gave their notes to him for seven thousand one hundred dollars, and, to secure the payment of the notes, gave a deed of trust, (Thomas Rainey, trustee,) dated 13th August, 1835, on said lot. This deed of trust was registered 10th November, 1835.

In November, 1835, Reno sold and transferred, for a valuable consideration, the said notes and deed of trust to complainants. Since that time, and since registration of the deed of trust, John L. Johnson has purchased said lot, and has possession of it, and Rainey fraudulently refuses to execute the deed of trust.

Johnson defends the case, and claims title to the property, against the deed of trust, under a purchase at sheriff's sale, dated 3d October, 1836, which deed was registered 3d July, 1837; (filed.) The facts relative to said deed are these: the lot was sold by the

sheriff of Hinds county, under three executions against Reno, issued on forthcoming bonds forfeited and liens, commencing as follows: Planters' Bank *v.* Reno *et al.* forfeited 1st Monday of September, 1835, judgment, interest and costs, $398.95; Ahero *v.* Reno *et al.* forfeited 1st Monday of July, 1835, judgment, interest and costs, $249.55; Thomas *v.* Reno *et al.* forfeited 1st Monday of July, 1835, judgment, interest and costs, $263.61—the judgment, interest and costs in said three cases being $912.11. See Demoss's deposition and records filed.

The lot was bid off by Nathan Ewing, at $7,525. Ewing paid on the bid $200 or $300, and afterwards the Nobles paid the remnant of the $912.11, due on said executions, which is all that ever was paid on said bid. The Nobles gave their receipt to Demoss for the balance of the bid. At the time of that purchase, Ewing, who was barkeeper for the Nobles, told Demoss that the Nobles would pay the remnant of the $912.11, and requested that thereupon title should be made to the Nobles. No title was, however, made until a long time thereafter, and then at request of Nobles made to Johnson. See Demoss's deposition and Johnson's answer. But in the mean time, to wit: on the 7th December, 1836, Johnson purchased from Nobles the said lot; price not stated or proved; paid about $7000, part of the purchase money, and received from Noble a bond to make title; he afterwards increased his payments to $10,000, in December, 1836. The Nobles procured the deed from the sheriff to be made to Johnson. This deed is dated 3d October, 1835, the day of the sheriff's sale; both Demoss's deposition and Johnson's answer show that deed to have been made a *long time* after the day of said sale, and after Johnson purchased of Noble. It is proved for registration on the 3d July, 1837, and on that day registered, nine months after its date, and six months after Nobles sold to Johnson. See Johnson's answer.

In April, 1837, Johnson gave to said Nobles, in part for the purchase money, his note for $11,200, with satisfactory indorsers. That note was unpaid at the commencement of this suit, and remains so to the present time. See Hall's deposition and exhibit.

The bill was filed 7th June, 1837; process served on Johnson 20th June, half a month before the deed from Demoss to Johnson

is proved to have been executed, and half a month before it was registered.

The judgments against Reno, under which the property was sold, and on which Nobles paid $900, were in being and existing of record at the time of the sale from Reno to Nobles. Nobles, therefore, purchased with notice of the existence of these incumbrances, yet executed the contract. He will not, therefore, be now allowed to set aside the original purchase and claim under the sheriff's sale. It would be tantamount to a rescission of the original contract. For, an incumbrance existing at the time of purchase, and of which the purchaser has constructive notice, or of which, on reasonable inquiry, he might have obtained actual notice, chancery will not rescind. Law Lib.; 5 Ves. 508; Fonb. Eq. 288, note; 2 J. C. R. 522.

This purchase by Nobles was but a clearance of an incumbrance to which the lot was liable at the time of their purchase, and if any thing, they are only entitled to the deduction of the amount actually paid by them, to wit, nine hundred and twelve dollars from their notes to Reno.

But Johnson claims to be a purchaser from Noble for a valuable consideration, without notice, of the deed of trust. This raises the question of the correctness of the probate of said deed of trust. I think it sufficient, though informal; but leaving that for other counsel to argue, there are two things developed by the answers and proof that are fatal to this plea of the defendant Johnson.

1. To entitle him to the benefit of it, he must have paid the purchase money before notice of our claim, otherwise the lot will be made liable, and he will be entitled to a deduction from the amount of purchase money unpaid. 2. Rob. Prac. 26, 27; 7 J. C. R. 65; 10 Ves. 271; 3 Pierre Will. 306; 1 J. C. R. 288, 300. Eleven thousand two hundred dollars of the purchase money still remains unpaid. See Johnson's answer and W. A. Hall's deposition and exhibit.

2. To have entitled him to this plea he must have completed his title before notice of our claim, otherwise, equities being equal, we being prior in time, will have preference in law. 2 Rob. Prac. 26, 27; 3 Leigh 235, 365; 1 Munf. 38, 303.

When the sheriff's deed to Johnson was made does not appear

by the record or testimony. It bears date 3d October, 1835, the day of the sheriff's sale, but both Johnson's answer and Demoss' deposition show it to have been made after purchase from Noble, which was in December, 1836, more than a year after it bears date. This is a falsehood in a material point. A deed false in a material point is not entitled to full credit. 1 J. C. R. 344. The presumptions are, therefore, in all things against said deed. But this deed is not proved to have been in existence until 3d July, 1837. The presumptions are, therefore, that it was not made until then. That was after this suit was brought, and after service of process on the defendant Johnson. Johnson, therefore had notice of our claim before he completed his title.

Again, we gave him actual notice before he gave us constructive notice of his purchase. Independent of notice, our equity is superior because our deed is oldest. Therefore if he be entitled to preference he must claim it because his notice was first; for under our statutes, see H. and H. p.—, neither deed had effect against third persons until registration or actual notice proved. His, therefore, was ineffectual against us until the 3d July, 1837; but ours took effect against him on the 20th of June, 1837, when process was served on him, and his registration afterwards gave him no preference, for priority of registry is of no avail against actual previous notice of an outstanding but unregistered mortgage or deed of trust. 2 J. C. R. 603.

The decree will, of course, be the appointment of a trustee *to* sell the property under the deed of trust, and the proceeds to apply to the payment of the two notes secured thereby.

J. S. and G. S. YERGER for respondent Johnson.

Our first inquiry will be, is Johnson a purchaser for valuable consideration without notice of the prior deed of trust made by Nobles to Reno. The bill admits him to be a purchaser. But this is not the case of a man purchasing a title with notice of a prior right. It is a purchase of the prior right itself, the legal evidence of which is the sheriff's deed to him. The whole proof rests on the complainant. We do not set up the defence of purchase for consideration with notice of a prior equity, but we say we have the prior legal and equitable title by virtue of the sher-

iff's deed, provided the judgments bound the interest of Reno. Being purchaser at sheriff sale, we stand in the lieu of creditors.

Neither the deed of trust from Noble, nor the deed from Reno is proved as required by law. The justice's seal is not to the certificate, nor does the certificate state that Noble sealed and delivered the deed; it only says he signed it.

If Ewing purchased for the benefit of the Nobles and paid the money himself, until the Nobles repaid him he would have the legal title under the judgments. It is not the purchasing of property for another, but the payment of the money by the other which constitutes a resulting trust.

Johnson had no notice of any arrangement between them, or of the deed of trust. If he had, it would make no difference, for the doctrine of purchase with notice applies only to purchasers from the party who previously sold of a prior right. Here the purchase was of the prior right itself. 1 Story, 386. Notice to Ewing is not notice to Johnson. 1 Story, 396. But if the purchase had been from Nobles, actual notice is denied. It must be clearly proved. 4 Cruise Dig. 499; 2 John. Ch. Rep. 130; 8 John. Ch. Rep. 157. If the registry of the deed of trust is constructive notice, the acknowledgment and probate of the same must be such as is required by law. 4 Cruise Dig. 488, note.

The deed of trust is not acknowledged and certified as required by law. Rev. Code p. —; 2 Watts Rep. 31; 6 Munroe, 288; Littel's Select Cases, 292; 4 Dana, 329. A purchaser without notice is protected as to all payments made prior to notice. 1 John. Ch. Rep. 298; Story's Pleading, 213–14–18, 653; 4 Paige, 368.

The CHANCELLOR.

To understand and properly dispose of the several questions raised in this case, it is necessary that I should advert to the leading facts, which serve to develope its character.

The complainant is the assignee of several promissory notes given by the defendants, E. B. & S. F. Noble to Lewis Reno, for the purchase of some town lots in the City of Jackson. A deed of trust was given on the lots to secure the payment of the notes so made, which notes and deed of trust were afterwards transfer-

red by Reno, to the complainant, who now alleges that the trustee named in the deed refuses to execute it, and prays that the same may be carried into effect by a decree of this court. The answer of the Nobles admits the sale by Reno to them, and the execution of the notes and deed of trust referred to in the bill, but states by way of defence, that lot No. 8 included in said purchase, was levied on and sold, by virtue of executions against said Reno of older date than their deed from him. That one Nathan Ewing bid off said lot at said sale, and agreed to let them have the benefit of his bid, upon condition that they refunded the amount of money paid by him. It appears that after the sheriff's sale, and before he made title to any one, the Nobles sold the lot to the defendant Johnson, and procured the sheriff to make a deed direct to Johnson. Johnson states in his answer, that he had no actual knowledge about the existence of the deed of trust in favor of Reno, at the time when he became the purchaser of the lot from Noble, and insists that his title is clear and complete. The deposition of Demoss, shows that Ewing was the bar-keeper of the Nobles at the time of the sale made by him as sheriff of said town lot; that Ewing paid two or three hundred dollars and directed him to make a deed to the Nobles; that they paid the remainder of the money due on the executions, amounting to upwards of nine hundred dollars. The defence of Johnson seems to me to depend in part, upon the question whether the Nobles are to be regarded as the real purchasers under the sheriff's sale, and if so, whether the effect of that purchase was to cut out the incumbrance which the complainant seeks to make available. I think it is sufficiently apparent that Ewing acted as the mere agent of the Nobles in bidding at the sheriff's sale; this is plainly inferrable as well from the facts referred to, as from the circumstance that nearly all the purchase money was paid directly by them to the sheriff, and that Ewing at no time claimed any title under his bid, but directed the sheriff to make a deed direct to his employers. Indeed the Nobles distinctly admit in their answer that they were compelled to raise and pay the amount of the execution against the lot. In this part of the answer there is a strongly implied, if not direct admission in support of the allegation of the bill that Ewing acted as a mere agent in bidding at the sheriff's sale, and that his bid

was paid with Noble's money. From all these facts, it is difficult to resist the conclusion, that Ewing's agency in the matter, was a mere contrivance by which the Nobles intended to become the real purchasers through a feigned purchase on the part of another, and then set up title through that channel against their immediate vendor by way of defeating the payment of the purchase money. This the law will not tolerate.

A purchaser in possession is not permitted, except under peculiar circumstances, to buy in an out standing incumbrance or title, and oppose it to the title of his vendor, under whom he entered.

A court of equity will re-imburse a purchaser in money advanced in the extinguishment of incumbrances, by way of perfecting his title, but will not permit him to array such incumbrance in hostility to the title of his vendor. 4 Munroe's Rep. 297-8; 2 John. Ch. 33.

If then the transaction shows that the Nobles were the real purchasers at the sheriff's sale, it is quite clear that they could only claim to have the amount of money paid at such sale, abated from the purchase money due by them, under the deed of trust. No principle is better founded in equity, than that a purchaser who buys up or discharges an incumbrance can only claim against his vendor the amount actually paid, because that would be the measure of damages in an action upon the covenants in his deed. Sugden's Vend. 1 pt. 642. But it is insisted, by the counsel for Johnson, that the fact that the deed under the sheriff's sale was made direct to him, clothes him with all the rights of a purchaser at that sale, and that his title commences with the date of the judgment under which the lot was sold, which is older than that of the complainant's deed of trust. And it is insisted that even if Johnson is to be regarded as a purchaser from the Nobles, he is a purchaser without notice of the complainant's deed of trust, and is entitled to protection against it. I propose to examine these points in the order in which they are made. The argument that Johnson is to be regarded as a purchaser at the sheriff's sale, has, I conceive, no foundation in the facts of the case; the contrary is fully established by every feature of both the pleadings and proof. Johnson, himself, most distinctly admits in his answer that he purchased directly from the Nobles; he says he was not even at the

sheriff's sale, and did not commence a treaty for the purchase from Noble until some time thereafter; and he shows that although he received a deed from the sheriff, he also took the obligation of the Nobles to make him a title. Johnson was then in truth, and in fact, a purchaser from Noble, and the mere expedient of taking a deed from the sheriff, under the direction of Noble, did not change the true nature and character of the transaction, so as to destroy the prior equity of third persons against his vendor. A Court of Equity looks to the substance of things, and will not permit the ends of justice to be defeated by any formal contrivance of the parties. There is much reason to believe that this expedient was devised in anticipation of the present controversy. The fact is clear that at the time of the purchase by Johnson, the title to the lot was beneficially and substantially in the Nobles; the interest which they acquired by their purchase at sheriff's sale enured to the title they obtained from Reno, under which latter title they could alone claim as against Reno or his assignees.

Johnson, then, having purchased from the Nobles, stands in their situation with reference to the deed of trust, unless he is protected, as a *bona fide* purchaser without notice of that deed; and this brings me to his second ground of defence. The deed of trust appears to have been recorded on the 11th day of November 1835; but it is insisted that this registration did not amount to notice because of the defects in the certificates of proof and acknowledgment. The certificates are not made under the seal of the certifying officer, nor is it stated by the witness who was called to prove the deed, that he saw the grantors sign the same, or that he saw the other witness sign in the presence of the grantor, or that they signed in the presence of each other. It is clear that these certificates fall far short of the requirements of the statute of the state upon that subject; the registration of the deed does not therefore, according to the authorities upon that subject, amount to constructive notice to subsequent purchasers. How. & Hutch. Dig. 345-6; 1 Sch. & Lefroy 157. Heister *v.* Fortner, 2 Binney's Rep. 40. James *v.* Morey, 2 Cow. 246--296.

These authorities hold that a deed unduly registered from the want of a valid acknowledgment, is not notice. It may be well doubted, however, whether upon a just application of well settled

Henry Harper *v.* Lewis Reno *et al.*

principles to all the facts of this case, Johnson can assert any claim to the protection of the court as a purchaser without notice. Whether the deed of trust was fully and legally executed and recorded, so as to amount to constructive notice, or not, it at least created an equity in favor of the complainant, which he is entitled to enforce, unless notice of that equity is fully and positively denied.

A purchaser who rests his defence in equity upon the fact of being a *bona fide* purchaser without notice, must deny notice fully, positively, and precisely, although notice be not charged on the other side, and must also deny all knowledge of the facts charged from which notice may be inferred. Gallatian *v.* Cunningham, 8 Cow. R. 361; Woodruff *v.* Cook, 2 Edw. Ch. R. 259; Hopkins' Ch. R. 48.

Is Johnson's answer a full, positive and precise denial of notice of the complainant's equity? I think not. Referring to the allegations of the bill with reference to the sale by Reno to Noble, the notes given for the purchase money, the deed of trust made to secure the payment, and the assignment thereof to the complainant, he says of these matters he "never had any actual knowledge, or indeed any information other than that the said E. B. and S. F. Noble, or one of them, informed him about the time of the sale of said lot to the respondent that they had purchased the same from said Reno; and about January, 1837, he heard complainant speak of his claim: certain he is he never had earlier or more specific information on these matters, nor indeed, to the best of his memory and belief, any more detailed information until seeing a copy of said bill." There is a degree of circumlocution about all this that leaves one in doubt as to what he intended to admit or deny. He has chosen to group a number of important facts, and then proceeds in general and indefinite language to answer them in the aggregate. Does he mean to affirm that he had no "actual knowledge" or "specific or detailed information" of these facts taken as a whole? or that he had no information of these facts taken separately? He may have had no precise knowledge of all the facts taken collectively, and yet be well advised of some one of those facts taken separately. The phrases, "actual knowledge" and "detailed information," are altogether too equivocal, and fall far short

of that full, direct, and positive denial which a purchaser who claims protection against the equity of another on account of want of notice, is required to make. It is not necessary that he should have had actual knowledge or detailed information in order to charge him with notice. If he had such information as gave notice of the substance of the transaction, or as would have led him to actual knowledge or detailed information on the subject, it was quite sufficient. It is a well recognized principle, that whatever is sufficient to put a party upon inquiry, amounts in equity to notice. Johnson admits that he was informed at the time of the purchase that Noble bought the same town lot from Reno. The deed from Reno to Noble recites that the purchase money was "secured to be paid." Slight diligence on the part of Johnson would have informed him that the money was secured to be paid by the deed of trust, which the complainant now asks to enforce.

But whether his denial of notice of the complainant's claim at the time of his purchase be sufficient or not, there are facts in the case which charge him with such notice before he had paid the purchase money. He admits that the complainant informed him of his claim as early as January, 1837; and it appears from the deposition and the exhibit thereto of Hall, that eleven thousand dollars of the purchase money was then owing, due, and unpaid— an amount greater than that which the complainant claims to enforce under his deed of trust. He also had notice as early as the 20th June, of the same year, by the service of the process in this case, at which time it seems the purchase money still remained unpaid. It was his duty to have paused at the first notice, and to have refused to go further with his contract; and if he afterwards made any payments, they were made in his own wrong.

Upon this ground, if no other, the defence of Johnson must fail. A purchaser, although he may have no notice at the time of his purchase, yet if he receives notice before he makes a payment of the purchase money, the land in his hands becomes bound from that time by the prior equitable lien, to the extent at least of the purchase money that then remained unpaid. Hence he who would protect himself, as a purchaser without notice, must not only deny that he had notice, but it must also appear that he did not receive notice before payment of the purchase money. Wigg

*v.* Wigg, 1 Atkins 384; Hardingham *v.* Nicholls, 3 Atkins 304; Tourville *v.* Nash, 3 Peere Wms. 307; Boswell *v.* Buchanan's Executor, 3 Leigh's Rep. 365.

From every view I have been able to take of the case, I think the complainant is entitled to the relief which he asks. I shall accordingly direct that the deed of trust be credited with the amount paid by the Nobles under the sheriff's sale, and that a new trustee be appointed, with power and directions to sell the lot in question upon the terms pointed out in the deed. The complainant must pay the costs.