| 77 | 827 |
| 88 | 645 |
| 77 | 827 |
| 92 | 250 |
| 77 | 827 |
| 100 | 616 |
| 77 | 827 |
| 107 | 337 |

## Staunton.

## CLICK AND AL. V. GREEN AND SADLER.

October 18th, 1883.

1. VENDOR AND VENDEE—*Breach of warranty—Measure of damages.*—The fixed rule as to the measure of damages to which vendee is entitled upon a breach of warranty of title, is the amount of purchase money paid by him, with interest from the date of his eviction from the land. *Threlkeld* v. *Fitzhugh*, 2 Leigh, 451, approved.

2. IDEM—*Covenants, joint or several.*—C. and S. being jointly in possession as joint owners of land, jointly sell same to G. and S., and convey it to them. In their deed they say: "And the said C. and S. covenant that they will warrant generally," &c.

HELD:

This is a joint and several warranty; and both warrantors are responsible to the vendees, upon their eviction, for the payment of the full measure of the damages.

3. FRAUDULENT CONVEYANCES—*Circumstances indicating fraud.*—Conveyance of all his property by a father, greatly in debt and apprehensive of a heavy liability by the decision of a suit against him for damages for breach of warranty of title to land sold by him to his son for an improbable cash payment, and deferred payments without interest, extending through a period of fifteen years, and agreements on son's part to provide maintenance for his father and mother during their lives, presents a case which, without full explanation, is indicative of fraudulent intent, especially where the son, who might afford the necessary explanation, if any there was, is not examined as a witness, in the suit to set aside the conveyance for fraud.

4. DEEDS—*Consideration—Extrinsic evidence.*—It is well settled that the consideration named in a deed may be enquired into. *Summers* v. *Darne*, 31 Gratt. 804. But he who undertakes to show a different consideration, must do it by satisfactory proof.

Appeal from decree of circuit court of Rockingham county

entered 15th June, 1882, in the cause of John F. Green, and W. F. Sadler against Abraham Click, David Click and others.

The object of the suit was to set aside as fraudulent, a deed executed 1st March, 1881, by A. Click, to his son, David, conveying his farm of one hundred and eighty acres in said county, and all his personal property, in consideration of $9,000, whereof, the deed specified, $1,100 was paid in cash, and for the balance, bonds were given payable without interest, at intervals during the period between the years, 1882 and 1897, and of David's agreement to provide for his father and mother during their lives.

On 18th January, 1866, A. Click and one J. S. Speck had, in consideration, named in the deed, of $3,100, conveyed to said Green and Sadler a tract of four thousand acres of unimproved land, with general warranty. From this land in 1881, under a judgment of the circuit court of the United States at Harrisonburg, Emily Hollingsworth evicted Green and Sadler by paramount title. After their eviction, and previous to the execution of the deed of A. Click to his son David, and to the institution of this suit, Green and Sadler had brought an action in the said circuit court, against A. Click alone, Speck being dead and insolvent, to recover damages for the breach of their warranty of the title to the said four thousand acre tract. Subsequent to the execution, of course, of the deed of A. Click to his son, David, Green and Sadler instituted this suit for the purpose, as aforesaid, of setting aside the said deed, and also to enjoin the alienation of the one hundred and eighty acres of land and of the bond given therefor, and for a decree for the amount of principal, interest and costs due them by reason of the breach of warranty aforesaid. On motion of A. Click, Green and Sadler were put to their election between their said action at law and this suit in chancery, and dismissed the former. When A. Click conveyed his farm, &c. to his son, he was indebted to the verge of insolvency and was apprehensive of the results of said action for damages. The mode of the payment of the $1,100, by David,

and other circumstances attending the conveyance of the property to him were not satisfactorily explained, he not having testified in this suit. By its decree, the circuit court set aside the deed of A. Click to his son as fraudulent and void, and adjudged that he pay to Green and Sadler the sum of $3,100, with interest from 1st May, 1881, the date of their eviction, and their costs.

From this decree A. and D. G. Click obtained an appeal from one of the judges of this court. The remaining facts and the points raised, are set forth in the opinion.

*Robert Johnson,* for the appellants.

*G. W. Berlin,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

On the 18th day of January, 1866, Abram Click and Jonathan S. Speck, of the county of Rockingham, sold and conveyed a tract of land lying and being in the county of Augusta, described by metes and bounds, and containing four thousand acres, to John T. Green and W. F. Sadler, of Cumberland county, in the state of Pennsylvania, for the consideration of $3,120, mentioned in the deed. The four thousand acres thus conveyed was part of a fifty-two thousand acre survey, situated partly in each of the counties of Augusta, Pendleton and Rockingham, the fee simple of which was in one Emily Hollingsworth, of the city of Philadelphia, in the state of Pennsylvania. This fifty-two thousand acre tract was kept regularly upon the land books of Augusta county in the name of said Emily Hollingsworth, and those under and through whom she derived title, and the taxes regularly paid, but by some oversight, not explained, the same got on the land books of said county of Rockingham, and for non-payment of taxes there, was, in 1860, sold as delinquent land for taxes supposed to be due, and was

purchased by one Jacob Dundore, and the whole tract was conveyed to him by deed as provided by law in such cases about the year 1862 or 1863. Afterwards the said Dundore conveyed one undivided half of his said purchase to one John R. Koogler, and thereafter said Dundore and Koogler conveyed by metes and bounds eight thousand acres, part of said fifty-two thousand acre tract to said Abram Click and Jonathan S. Speck jointly; and afterwards, to-wit: On the 18th day of January, 1866, said Click and Speck conveyed, with covenants of general warranty, four thousand acres, part of said eight thousand acres conveyed to them by said Dundore and Koogley, to John T. Green and W. F. Sadler, the appellees here, and put them in possession thereof.

Subsequently, to-wit, in the year 1880, said Emily Hollingsworth brought her action of ejectment in the circuit court of the United States for the western district of Virginia at Harrisonburg, Virginia, against said appellees, Green and Sadler, and others, to recover the said Hollingsworth survey of fifty-two thousand acres as aforesaid, which embraced as part thereof said four thousand acres, sold as aforesaid by Click and Speck to said Green and Sadler. To this action of ejectment the said Click and his and the said Speck's vendors and others were also made parties defendant, but said Speck having died insolvent, some years previous, was not made a party. At the May term, 1881, of said circuit court of the United States, the said ejectment suit was tried, and the said Emily Hollingsworth recovered said land, as also the balance of said survey of fifty-two thousand acres, by title paramount, excepting certain parcels previously sold and conveyed by her.

Pending this action of ejectment, and within two months prior to the survey therein, said Abram Click, the surviving alienor of said Green and Sadler, by deed dated the 1st day of March, 1881, conveyed to his son, David G. Click, who lived with his father, his tract of land of one hundred and eighty acres, situated in said county of Rockingham, on which said Abram Click lived and continued to live, for the consideration

named in said deed of $9,000, of which $1,100 was acknowledged in said deed as cash in hand paid; and for the residue in fifteen annual payments of $500 each, the first due and payable on the first day of March, 1882, with like payments on the first days of March, 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890, 1891, 1892, 1893, 1894, 1895, and 1896 respectively; and $400 on the 1st day of March, 1897, making together the said sum of $9,000; and also the further consideration of a genteel and comfortable support in food, raiment and lodging during health, and medical aid and nursing attention during illness and infirmity for said Abram Click, and Susanna, his wife, for their natural lives. At the same time March 1st, 1881, said Abram Click conveyed to another son, H. F. Click, another tract of sixteen acres of land in Rockingham county for the consideration named in the deed of $500 cash; the two tracts thus conveyed being all the real estate owned by said Abram Click.

After being thus evicted, the appellees here, said Green and Sadler, instituted their action at law to recover upon the covenants contained in the deed of conveyance to them from said Click and Speck; and, pending said action at law, filed their bill setting forth their said purchase, the conveyance by Click and Speck to them, the eviction aforesaid, the conveyance aforesaid from Click to his son; and charging that said conveyance was made to hinder, delay and defraud the creditors of said Click, and especially the complainants, prayed that the same be set aside and annulled as fradulent and void; and that said Abram Click, David G. Click, and H. F. Click be made parties defendant to said bill, required to answer the same on oath, and that they be enjoined from disposing of said lands or the proceeds thereof, and for general relief. Being required to make election which suit they would proceed with, the appellees dismissed their said suit at law, and proceeded in their said suit in equity.

Abram Click, the father, and his said two sons, his alleged alienees for value, each severally answered said bill and denied that said deeds were made to hinder, delay and defraud either

the complainants or any other creditors of said Abram, and insist that the transaction was in good faith and for valuable consideration.

The complainants, in their bill, among other things, charged that said Abram Click was making away with the bonds taken from his sons, as if for the land conveyed to them, and that said sons were aiding him in doing so.

In his answer Abram Click denies that he has assigned any of the bonds taken for said land, except *some* to *bona fide* creditors of his; but fails to disclose how many, the amount, or who said creditors and assignees are. And proceeding in his answer to give an account of, and to show good faith in, his dealings with his said two sons, he says: "Respondent had made it a rule to agree to pay his sons $100 a year for their services so long as they remained with him and worked upon the farm, after they were respectively twenty-one years of age." That "prior to the 29th day of March, 1879, your respondent made an arrangement with his two sons, John F. Click and and David G. Click, by which he sold them his home farm and certain personal property, for the sum of $9,000, in long payments, and the support of himself and wife for their several lives, as evidenced by the deed of respondent and wife, of the date aforesaid, then duly authenticated, filed and prayed to be taken as part thereof; that David G. and John F. Click used and enjoyed the farm and personal property, so conveyed to them, for two years, when, upon considerations and terms agreed upon between them, they returned to your respondent said deed, which had been delivered to them, but by negligence not recorded, and requested respondent to convey the land aforesaid, by another deed, to said David G. Click alone; which respondent did. The deed then made by respondent and wife is the deed, a copy of which is filed by the complainants with their bill." That "respondent had made it a rule to agree to pay his sons $100 a year for their services as long as they remained with him and worked on the farm, after they came respectively twenty-one

years of age." And proceeding in his account, said Abram further says in his said answer: "Under arrangements made with David G. and John F. Click, *of this character*, your respondent owed John F. Click for services, actually and faithfully rendered, under said contract with him, $1,150, and to David G. Click $100, when the deed of the 29th day of March, 1879, was made." And he says: "These sums constituted the down payments acknowledged in said last mentioned deed."

Said Abram Click, further on in his answer says: There were no liens on said lands conveyed by him, when either said first or second deeds were made and delivered, and that complainants have none now. But, he says, he did owe some debts, (to whom or to what amount he does not disclose) and so far from making this arrangement with his sons for the purpose of hindering, delaying or defrauding his then existing or future creditors, one strong inducement was to pay his debts; that another great reason was to get rid of the care of the farm (he then being as stated in his answer only a little over sixty years of age) and to provide a fund for the payment of his debts, and a support for himself and wife for the remainder of their old age. And further answering he holds up the fact of the extraordinary length of time through which the payments from his son, David G., to him are made to run, as conclusive evidence of fair dealing. The answers of David G. and H. F. Click are, respectively, to the same effect.

At the May term, 1882, of the circuit court of Rockingham, the cause came on to be heard, when a decree was rendered in favor of the complainants in said chancery suit against said Abram Click for $3,120, the purchase price mentioned in the said deed from Click and Speck to Green and Sadler, with interest from the first day of May, 1881, the date of the eviction aforesaid, and costs; and declaring said deeds, to-wit, the deed from Abram Click to John F. Click and David G. Click of date March 29, 1879; and the deed from said Abram Click and wife to David G. Click of the first day of March, 1881, to have

been been made by the said Abram Click to hinder, delay and defraud his creditors. and especially the complainants, the said Green and Sadler, and therefore null and void.

From that decree this appeal was taken.

The several questions which arise will now be considered in the order in which they occur.

The first question which presents itself is, what is the rule as to the measure of damages which a warrantee of land is entitled to recover upon eviction? Upon this point the appellants concede that the rule was correctly laid down by the circuit court, but they insist that the said court erred in the application of the rule to the facts of the case; for, they say, the covenant in the deed from Click and Speck to Green and Sadler is not, in terms, either joint and several, or joint or several, and that the grantors or covenantors were thereby only bound each for a moiety of said purchase money. On the other hand, the appellees claim that the covenant is joint; that Click, the surviving covenantor, is bound for the whole purchase money with interest from the date of sale, instead of from the time of eviction, as decreed by the court below; and to maintain this proposition, it is strenuously insisted by counsel for the appellee that their clients purchased this land in a wild unimproved state, that its chief value was in its timber and minerals, such as coal, iron ore, &c., which were supposed to exist in and upon said land, which could only be utilized and made valuable after said purchase by the construction of railroads near said land, and that by reason of a projected railroad in that locality, said land had, at the time of said eviction and loss of the land to the purchasers, become greatly enhanced in value, and being wholly unimproved either before or since said purchase, the purchasers, the appellees, have not only lost the land, from which they have derived no benefit, but have lost the benefit of the greatly increased value of same. However plausible the argument in a case like this, or with whatever force it has been or may be presented, it cannot be entertained as a rule of decision by this court, for the

reason that to do so would be to inject into the contract something not in the contemplation of the parties at the time of entering into it. The reason why the increased value cannot be estimated in the damages incident to the breach of the covenant, is that the covenant, which runs with the land, cannot be construed to extend to anything other than the land itself, which is the subject matter of the covenant. A different rule, however hardly this one may in some cases seem to operate to the prejudice of the warrantee, would be fraught with most disastrous consequences. In the absence of fraud, and none is pretended in this case, it would be a ruinous rule to say that a vendor making a sale in good faith—it may be of land of but little value, but which, from the discovery afterwards of rich mineral deposits, or from other cause, should become suddenly of immense value—should be held by his vendee, on eviction, liable for such enhanced value as the measure of damages. Very few persons would undertake to warrant the title of land conveyed, if such were the rule. But it is useless to discuss this question, for, since the case of *Threlkeld* v. *Fitzhugh,* 2 Leigh, 451, the definitely fixed rule, never since departed from, in Virginia has been that the purchaser, upon eviction, in a case like this, is only entitled to the purchase price paid, with interest from the date of eviction, and costs. This rule is safe and certain; it is too well established, too plainly essential to the general good, to admit of doubt. Therefore, there is no error in this respect in the decree of the court below. The other question discussed by counsel under this head—to wit: that the covenant in question is neither joint and several nor joint or several, and that the covenantor, Abram Click, is only chargeable with a moiety of the purchase money and interest from date of eviction—can and will be very briefly disposed of. This will be done by simply looking to the obvious common sense meaning of the words of the covenant itself. They are: "And the said Abram Click and wife and Jonathan S. Speck covenant that they will warrant generally," &c.; *i. e.,* that they, acting together, acting

jointly, and, according to the fact, having, as they did, a joint ownership or claim, did jointly covenant to warrant generally. It is inconceivable upon what principle or rule of construction this contention on the part of counsel for the appellant is sought to be founded.

On this subject, in Rawle on Covenants for Title, 537, it is said: "Whether the liability created by covenants for title be joint or several, or joint and several, obviously depends upon the terms in which they are expressed. When an obligation is created by two or more, the general presumption is that it is joint, and words of severance are required in order to confirm the liability of the covenantor to his own acts." So, Platt on Covenants, page 117, says: "Very few questions have been agitated, whether covenants on the part of covenantors have been joint, several, or joint and several; the language has generally been sufficient to indicate the intention of the parties, and the nature of the covenant in this respect." In the case under consideration, there are no words indicating severance; on the contrary, the terms employed necessarily import a joint obligation; and in this respect the decree of the court below is without error.

The next question necessary to be noticed is, whether the conveyances aforesaid, from Abram Click to his said sons, were fraudulent and void. This is, in this respect, a very unusual case. It may justly be characterized, in general terms, as bristling all over with ill-concealed intent to hinder, delay, and defraud creditors. Only a few months prior to the institution of the action of ejectment by Emily Hollingsworth, which resulted in the eviction of the appellees, Green and Sadler, the appellant, Abram Click, the surviving and solvent alienor to said Green and Sadler, conveyed almost his entire estate, real and personal, to two of his sons, John F. and David G. Click, for the pretended consideration of $1,250 cash, and fifteen annual payments of $500 each, and one, the last, of $250, making said sum of $9,000; thus making the deferred payments run through

the period from the 29th day of March, 1879, the date of this transaction, to the 1st day of March, 1895, a period of fifteen years; and thus, in the nature of things, hindering and delaying, to say the least, his then creditors; it appearing that he was at that time largely in debt—in fact, according to his own subsequent showing, approximating insolvency. The record shows that said action of ejectment was strenuously resisted. Abram Click, a deeply interested defendant in said action, was not only, we must presume, making active resistance to said action, but was anticipating the probable result, before it was brought, and made said deed of March 29th, 1879, to screen himself from his just liability. His son John F. was then thirty-three years of age, and his son David G. twenty-two years old. He then, for the first time, discovers that he had "made it a rule," to use his own language, "to agree to pay to his sons $100 a year for their services so long as they remained with him and worked upon the farm, after they were respectively twenty-one years of age." So, he owed in this way to his sons, John F. and David G., $1,250, and this he makes the cash payment, acknowledged in said deed. Surely, if he honestly owed all these very slim annual allowances for services, which he says were faithfuly performed by his sons, he ought, in common justice, to have allowed them interest on such poor wages, deferred in payment for so many years. This deed, he says, was duly executed and delivered, but, by carelessness never recorded, and that John F. and David G., took possession of the farm and used and enjoyed it thereunder for two years. Then John F. abandoned the deed of 1879, and the same was returned to Abram, with the request that he, under arrangements between John F. and David G., convey to David G., by a new deed, the same property; which was done, as claimed, by the deed of March the 1st, 1881. In this deed Abram Click suddenly finds himself indebted to his son, David G., in the sum of $1,100, which is the cash payment acknowledged therein, the gross consideration named, and the very unusual time given, without interest, for the deferred payments, being similar to those in the former deed, except that the

period for the deferred payments begins, necessarily, two years later, and the last payment is for $400 instead of $250, as in the former deed. In his answer, Abram Click utterly fails to give any satisfactory explanation of the arrangement by which John F. Click abandoned the deed to him and David, and in consequence of which the subsequent deed was made to David. In fact, in his deposition in the cause, Abram Click treats this very serious matter so lightly as to say "it is unnecessary to enter into the arrangement between his two sons, John F. and David." David, in his answer, chose, too, to give this matter "the go-by." Moreover, it is a significant fact that neither John F. nor David Click were introduced as witnesses. They knew all the attendant circumstances, but, for reasons unexplained, they are permitted to stand by in silence, when these very remarkable transactions, covered all over with the marks of fraud, need explanation. Such explanations, as we must infer, would have been given had they been such as to stand the scrutiny of honest investigation. It is useless to pursue further this analysis of the evidence: we have carefully examined it all, and are fully of the opinion that there is no error in the decree complained of in this respect.

Another question for determination is, is the consideration mentioned in the deed from Click and Speck to Green and Sadler the true consideration? The appellants say it is not, and much is said in evidence *pro* and *con.* That the consideration named in a deed may be enquired into is well settled. *Summers* v. *Darne*, 31 Gratt. 804. But the covenator takes upon himself, when he undertakes to show a different consideration from that named, the burden of establishing it by satisfactory proof. Nothing of the kind is proved in this case, therefore the court below was right in adhering to the consideration named in the deed. For these reasons we are all of opinion that there is no error in the decree complained of, and that the same must be affirmed with costs to the appellees. Which is ordered to be certified to the said circuit court of Rockingham.

DECREE AFFIRMED.