88   641
100   616

88   641
109   267

## Richmond.

### ROLLER v. EFFINGER'S EX'OR.

January 21st, 1892.

1. VENDOR AND VENDEE—*Eviction—Measure of damages.*—Upon eviction, purchaser is only entitled to the price paid, with interest from date of eviction and costs.

2. IDEM—*Purchase of better title—Disavowal.*—If vendee buys up a better title than that of vendor, and latter was guilty of no fraud, he can only be compelled to refund the amount paid for better title. Vendee cannot disavow vendor's title.

3. IDEM—*Perfecting title—Re-imbursement.*—Vendee entering before a conveyance is perfected, is affected with an equity in favor of vendor; and if he purchases an adverse title, he cannot set it up against his vendor, who is entitled to have it upon re-imbursing purchaser.

4. IDEM—*Case at bar.*—R., with knowledge of outstanding claims, buys real estate upon contract for conveyance with special warranty of title, assuming to pay a vendor's lien thereon. Afterwards, at a sale under a decree for division among the heirs-at-law, in order to perfect his title, he purchases said outstanding claims;

HELD:

He is entitled to deduct from the price agreed, the amount he actually paid at the judicial sale, and no more.

Appeal from three decrees of circuit court of Rockingham county, rendered April 20th, 1888, April 19th, 1889, and October 29th, 1889, respectively, in a cause styled *Hall* v. *Effinger*, on proceedings therein had by the appellant, John E. Roller. Opinion states the case.

*T. C. Elder*, for appellant.

*G. G. Grattan* and *W. B. Compton*, for appellees.

LACY, J., delivered the opinion of the court.

This controversy, like that of *Conrad* v. *Effinger*, 87 Va. 59, is a controversy between the parties in the suit of *Effinger* v. *Hall*, in the said court, which was considered in this court in 1885, and decree rendered here on the 19th day of November, 1885, and is reported in 81 Va. 94. By reference to the latter case, as is also briefly stated in *Conrad* v. *Effinger*, *supra*, it will be seen that one James Hall, of Harrisonburg, Va., by will probated in March, 1835, devised certain real estate to his wife for life, and, at her death, to be sold, and the proceeds divided as stated therein. The widow married, and she and her husband conveyed the life-estate to the purchasers named in the record, and subsequently some of the parties entitled to the proceeds of the sale of the lands, upon the execution of the will, after the termination of the life-estate, conveyed their interests, and the purchasers of the land thus acquired the right to the eleventh-sixteenths of the proceeds of the sale of the lands after the death of the life-tenant. In 1850 the purchaser conveyed some fifteen acres, situated in the town of Harrisonburg, to M. H. Effinger, which said fifteen acres were divided into town lots, and built upon by subsequent purchasers. The life-estate terminated in 1879 by the death of the wife of James Hall, who had become Mrs. Dawdall, whereupon certain claimants, under the will of James Hall, who had not parted with their interests in the proceeds of the sales of these lands, devised by the will to be sold, filed their bill against Effinger and the various persons in possession of said land under deeds from Liggett, the purchaser of the other interest, asking that the land be sold, and that the proceeds be distributed. In that suit the circuit court decided that the complainants were entitled to five-sixteenths of the lands without compensating the defendants for the improvements the latter had put upon them, and directed the lands to be sold. Upon appeal here by the defendants in that suit the decree of the circuit court was

affirmed. This controversy on this appeal is as follows : The property about which this dispute is, which is a part of the above-mentioned lands of James Hall, deceased, and is a house and lot on the corner of Main and Bruce streets, in Harrisonburg, Va. The lot fronted 184 feet on Main street, and ran back along the north side of Bruce street to a creek in the rear, and was occupied by James Hall in 1835, as his residence. On the 4th of August, 1875, Effinger exchanged this property with one M. G. Harman for other property. Harman assigned the benefit of this contract to Sheffey, trustee for W. S. Gurnee, of New York, Harman having previously sold off two lots to other persons ; and Gurnee got the residue, and agreed to pay what Harman still owed to Effinger ; and Effinger and wife conveyed to Gurnee's trustee, with general warranty. By a contract in writing between Gurnee, and the appellant here, John E. Roller, of the 31st of January, 1879, the former sold to the latter the Hall property, contracting for a deed with special warranty, and the price is fixed at $3,750, and Roller assumed to pay the debt of Harman to Effinger of $2,924.68, of June 5, 1877, and payable August 4, 1885. Mrs. Dawdall died in 1879, and on the 26th day of July, 1880, R. M. Hall and others, legatees under the will of James Hall, brought their suit, as stated above, and fully explained in *Effinger* v. *Hall*, 81 Va. *supra.* At this time Roller, the holder of the Hall residence, still owed the Harman bond to Effinger. It was not due until August 4, 1885. At the institution of the suit of *Hall* v. *Effinger*, Roller, being in possession as purchaser of a part of the real-estate sought to be sold in that suit, and being entitled, by his contract of purchase, to eleven-sixteenths of the proceeds of the land when sold under the will, was made a defendant in the bill, and he came in and answered separately, in which he set forth his interest in the suit, and asked for certain relief, and had his answer treated as a cross-bill in the decree following. He admitted the purchase of the Hall residence by him, and its then occupancy by him, and his assumption of the

Harman bond of $2,928.68, and that it was still unpaid, and said that he informed Effinger of his assumption of the Harman debt, and his knowledge of the outstanding claims of the Halls now asserted, and that he " would claim an abatement of the debt, so far as the same was necessary to relieve and discharge the property of this respondent from any and all claims of the heirs aforesaid, or from any other defect of title, which Effinger's agent agreed to." And says further : " This respondent conceives, therefore, that he has no interest in this controversy, except to know to whom to pay the debt due from him, and how much he must pay each, so that the title to the property may be completely cleared up." He sought then to have his contract maintained and performed, and the money which he owed be paid as the respective interests might appear. He further said that he desired to make some permanent and substantial improvements upon the property, and to be allowed to do so under the order of the court, so that he might have allowance for them at any sale which should be made. His answer was treated as a cross-bill. He was allowed to make and receive credit for the improvements, and at the sale ordered by the court he became the purchaser, on the 14th of January, 1885, at the price of $2,885. He had notified Effinger shortly before the sale that he would not give more than $3,000 for the property, and the sale was confirmed, and he was credited on the bond he owed to Effinger with five-sixteenths of the proceeds, and decreed to pay the residue of his purchase money, which was the eleven-sixteenths which he had purchased of Gurnee, with full notice of the outstanding interests, as he himself admits, and which he still owed to Gurnee's vendor, Effinger, under the assumption in his contract; so that his contract with Gurnee, as he had prayed in his cross-bill, was carried out and fully performed. He was allowed to retain his purchase, although he had bought land, and it had turned into personalty. He was not disturbed in his possession for a moment of time. He was allowed to erect his improvements

for his convenience and benefit, and the cost credited to him by his vendor, and he has not been required to pay by the decree a dollar more than his contract bound him to pay. But after the sale, finding that he had bought for a less sum than he owed, he filed a petition for a rehearing, and asks that he might be allowed—as, indeed, in substance, he had claimed by his exceptions in the cause to the commissioner's report— to have credit for five-sixteenths of the purchase price of the property, because he had been totally and actually evicted by the decree for the sale of his property. This is the established rule by which the measure of damages is stated to be : " That the purchaser, upon eviction, is only entitled to the purchase price paid, with interest from date of eviction, and costs." *Click* v. *Green*, 77 Va. 835 ; *Threlkeld* v. *Fitzhugh*, 2 Leigh, 451 ; Rawle, Cov. p. 168, note. But in this case there was no eviction of Roller; and the court, at his request, has protected him in his contract, and allowed him credit for the amount which he was called on to pay for the better title as to part of the property, and by which he has perfected his title.

" If the vendee buys up a better title than that of the vendor, and the vendor was guilty of no fraud [as he was not in this case, for Roller admits full notice as to the character of the title he purchased], he can only be compelled to refund to the vendee the amount of money paid for the better title. *Searcy* v. *Kirkpatrick*, Cooke, 211 ; *Mitchell* v. *Barry*, 4 Hayw. (Tenn.) 136, cited and approved by Mr. Justice Catron in *Galloway* v. *Finley*, 12 Pet. 293. " In reforming the contract," says the learned justice, " equity treats the purchaser as a trustee for the vendor, because he holds under the latter, and acts done to perfect the title by the former, when in possession of the land, inures to the benefit of him under whom the possession was obtained, and through whom the knowledge that a defect in the title was derived. The vendor and the vendee stand in the relation of landlord and tenant. The vendee cannot disavow the vendor's title." *Willison* v. *Anderson*, 3 Pet. 48 ; *Conn's*

*Heirs* v. *Manifee*, 2 A. K. Marsh, 242; *Wilson* v. *Smith*, 5 Yerg. 398; *Watkins* v. *Holman*, 16 Pet. 25, and note. Mr. Justice Grier cites and approves the rule as stated in *Galloway* v. *Findley*, *supra*, in *Bush* v. *Marshall*, 6 How. 291, and speaking of that case, said : " In the present case the vendee has bought in for $20 a legal title to a property worth more than $2,000, the possession of which he received from his vendor ; and, not only so, but contrary to good faith and fair dealing, he has interfered to overbid his vendor, who was usirfg every endeavor to purchase the title for the use of his vendee in fulfillment of his own covenants. The appellant has paid no more (or, if more, so little as to be unworthy of notice) than he agreed to pay for the purpose of getting a legal title. He has got a good title to the property, and ought, in justice and equity to pay for it the full consideration which he has covenanted to pay." *Brandt* v. *Foster*, 5 Iowa, 287; *Wheeler* v. *Sohier*, 3 Cush. 219. In this case Roller paid no more than he agreed to pay. In getting in the outstanding interests he used his vendor's money to make the payment, and yet claims that he was standing at arms-length—a position he did not assert until he had secured the complete title. A vendee of lands, entering before the conveyance is perfected, is affected with an equity in favor of his vendor ; and, if he purchases an adverse title, he cannot set it up against his vendor, but the vendor is entitled to have it upon reimbursing the purchaser. *Morgan's Heirs* v. *Boone's Heirs*, 4 T. B. Mon. 291, 298 ; *Harper* v. *Reno*, 1 Freem. Ch. (Miss.) 323, 333; *Wood* v. *Perry*, 1 Barb. 115, 134; *Keech* v. *Sandford*, 2 Eq. Cas. Abr. 741. These principles are well settled, and control this case, and I think, under the facts and circumstances here set forth, it is clear that the parties understood their relation to be such, and that, if the vendor had purchased, it would have been for the benefit of Roller, and that Roller did buy for the benefit of his vendor, so far as he was interested. Roller did not attempt to disavow even at the last, but said he did not intend to bid more than

$3,000.   His vendor knew that their interests were the same, and that he was bound to pay what was necessary to get in the outstanding interests to protect Rollins, his vendee; and that being done by Roller, he had no adverse interest.   The larger the purchase price was, the better for the Hall legatees; but this did not concern Roller as to the amount he had to pay Effinger.   This amount was fixed by contract, and if Effinger paid for the five-sixteenths himself, or allowed Roller credit for what they cost him, the result is the same—Roller's purchase is made good, and his title perfected, and Effinger pays the cost of making it so.   The decree of the circuit court appealed from here is plainly right and must be affirmed.

FAUNTLEROY, J., *dissented.*

DECREE AFFIRMED.