THOMAS WILLISON, PLAINTIFF IN ERROR *vs.* ANDERSON WATKINS, DEFENDANT IN ERROR.

It is an undoubted principle of law, fully recognized by this court, that a tenant cannot dispute the title of his landlord, either by setting up a title in himself or a third person, during the existence of the lease or tenancy. The principle of estoppel applies to the relation between them, and operates with full force to prevent the tenant from violating that contract by which he claimed and held the possession. He cannot change the character of the ·tenure by his own act merely, so as to enable himself to hold against his landlord, who reposes under the security of the tenancy, believing the possession of ·the tenant to be his own, held under his title, and ready to be surrendered by its termination, by the lapse of time or demand of possession. [47]

The same principle applies to mortgagor and mortgagee, trustee and cestui que trust, and generally to all cases where one man obtains possession of real estate belonging to another by a recognition of his title. [48]

In no instance has the principle of law which protects the relations between landlord and tenant, been carried so far as in this case, which presents a disclaimer by a tenant with the knowledge of his landlord, and an unbroken possession afterwards for such a length of time, that the act of limitations has run out four times before he has done any act to assert his right to the land. [48]

When a tenant disclaims to hold under his lease, he becomes a trespasser, and his possession is adverse, and as open to the action of his landlord as a possession acquired originally by wrong. The act is conclusive on the tenant. He cannot revoke his disclaimer and adverse claim, so as to protect himself during the unexpired time of the lease. He is a trespasser on him who has the legal title. The relation of landlord and tenant is dissolved, and each party is to stand upon his right. [49]

If the tenant disclaims the tenure, claims the fee adversely in right of a third person or in his own right, or attorns to another, his possession then becomes a tortious one, by the forfeiture of his right, and the landlord's right of entry is complete, and he may sue at any time within the period of limitation; but he must lay his demise of a day subsequent to the termination of the tenancy, for ·before that he had no right of entry. By bringing his ejectment he disclaims the tenancy and goes for the forfeiture. It shall not be permitted to the landlord to thus admit that there is no tenure subsisting between him and the·tenant which can protect his possession from this adversary suit; and at the same time recover on the ground of there being a tenure so strong as that he cannot set up his adversary possession. [49]

A mortgagee, or direct purchaser from a tenant, or one who buys his right at a sheriff's sale, assumes his relation to the landlord, with all its legal consequences, and is as much estopped from denying the tenancy. [50]

If no length of time would protect a possession originally acquired under a lease, it would be productive of evils truly alarming, and we must be convinced beyond a doubt that the law is so settled, before we would give our sanction to such a doctrine; and this is not the case upon authorities. [51]

[Willison *vs.* Watkins.]

The relation between tenants in common is in principle very similar to that between lessor and lessee. The possession of one is the possession of the other, while ever the tenure is acknowledged. But if one ousts the other, or denies the tenure, and receives the rents and profits to his exclusive use, his possession becomes adverse, and the act of limitations begins to run; so of a trustee, so of a mortgagee. [51]

In relation to the limitations of actions for the recovery of real property, the court think it proper to apply the remarks of the learned judge who delivered the opinion of the court in the case of Bell *vs.* Morrison, 1 Peters, 360, and to say, the statute ought to receive such a construction as will effectuate the beneficent objects which it intended to accomplish, the security of titles and the quieting of possessions. That which has been given to it in the present case is, we think, conformable to its true spirit and intention, without impairing any principle heretofore established. [54]

ERROR to the circuit court of the district of South Carolina.

An action of trespass to try titles was brought in the circuit court of South Carolina, on the 20th of April 1822, by the defendant in error, against the plaintiff in this court, for the recovery of six hundred acres of land situated on the Savannah river. The title claimed by the plaintiff below and the evidence are fully stated in the opinion of the court.

On the trial in the circuit court the defendant proved that Samuel Willison, his father, had possession of the land in 1789, and cultivated it till the period of his death in 1802, from which time his widow and family possessed it until the death of his widow in 1815; and that from 1815 until this action was brought, the children retained possession by their tenants. That in the lifetime of Samuel Willison, Bordeaux, through whom the plaintiff claimed, was apprised that he claimed to hold the land by an adverse title. That the widow in 1802, on demand made, refused to give possession to Ralph S. Phillips who claimed the land, and set up a title in herself, and was sued as a trespasser. That in 1793, Bordeaux and Willison were in treaty for the sale of this land; Bordeaux wishing to sell, and Willison to purchase. The plaintiff then offered in evidence a power of attorney from Bordeaux to Willison, dated February 1792, authorising him to take possession of the land, and sue trespassers; and that Willison was then a tenant of Bordeaux. The defendant having pleaded the statute of limitations (five years adverse

possession giving a title under it) relied upon the foregoing facts. But the presiding judge overruled the plea, and instructed the jury that, when a tenancy had been proved to have once existed, the tenancy must not only be abandoned, but possession given up, before an adverse possession can be alleged. To this decision the defendant excepted.

The defendant brought this writ of error.

In the argument of the cause, the counsel for the plaintiff in error presented for the consideration of the court other exceptions besides that upon which the judgment of the circuit court was reversed. The decision of the court is exclusively upon the law arising on that which is stated.

The case was argued by Mr Blanding and Mr M'Duffie for the plaintiff in error, and by Mr Berrien, attorney general, for the defendant.

Mr Justice BALDWIN delivered the opinion of the Court.

This was an action of trespass to try titles, brought in 1822, in the circuit court of the United States for the district of South Carolina, by Watkins against Willison, for a tract of land containing six hundred acres, on the Savannah river. This land was originally granted to James Parsons, who conveyed to Ralph Phillips, whose estate was confiscated by an act of assembly of South Carolina, and vested in five commissioners appointed by the legislature of that state. The five commissioners acted in execution of the law, but before any conveyance was made of the land in question, one of them had died, and two of the others had ceased to act, or resigned in 1783. The two remaining commissioners, in 1788, conveyed this land to Daniel Bordeaux and R. Newman, who in the same year executed to the treasurer of the state, a bond and mortgage to secure the payment of the purchase money, which, pursuant to an act of assembly passed for that purpose in 1801, was transferred and delivered to Ralph S. Phillips, the son of Ralph Phillips, to be disposed of as he should think proper; and by the same law the confiscation act, so far as respected Ralph Phillips, was repealed. A suit was brought on this bond in the name of the treasurer of the state

in 1803, against Daniel Bordeaux, and prosecuted to final judgment against his administrators in 1817, when an execution issued, on which the land was sold and conveyed by deed, from the sheriff to Anderson Watkins, the plaintiff in the circuit court, who claims by virtue of the sheriff's deed, and as standing in the relation of landlord to the defendant.

Samuel Willison, the father of the defendant, entered into possession of the premises in question in 1789, and cultivated them till his death in 1802; from which time his widow and children possessed them, till her death in 1815; since which time the children have retained possession by their tenants, till the commencement of this suit.

In 1802, Ralph S. Phillips, who was then the assignee of the bond and mortgage, made a demand of the possession from the widow, who refused to give it up, and set up a title in herself. He brought an action of trespass against her to try titles in January 1803, in which he was nonsuited in November 1805; and in March 1808 he brought another action of the same nature against her, in which no proceedings were had after 1812, which, by the law and practice of South Carolina, operates as a discontinuance of the action.

In 1792 Bordeaux, the mortgagor, executed to Willison a power of attorney authorising him to take possession of the land, and sue trespassers. Willison was then a tenant of Bordeaux.

In 1793 they were in treaty for the sale of the land; Bordeaux wanting to sell, and Willison to purchase. But during the life time of Willison, Bordeaux was apprised that he claimed to hold the land by an adverse title. The defendant exhibited no title other than what is derived from the possession of his father and the family.

The first question which arose at the trial, was on the admission in evidence of the deed from the two commissioners to Bordeaux and Newman; the defendant alleging, that no title passed by it, because it was not signed by the other two commissioners. The circuit court overruled the objection; the deed was read, and this becomes the subject of the first error assigned in this court.

As the court have been unable to procure the confis-

[Willison vs. Watkins.]

cation act of South Carolina, we are unwilling to express any opinion on this exception without examining its provisions, which are very imperfectly set out in the record; and as the merits of the case can be decided on another exception, we do not think it necessary to postpone our judgment.

The remaining exception is, that the circuit court erred in charging the jury, that the claim of the plaintiff was not barred by the act of limitations of South Carolina, which protects a possession of five years from an adverse title.

It appears from the record, that the defendant and his family have been in possession of this land for thirty-three years next before this suit was brought; but whether that possession has been adverse to the title of the plaintiff during the whole of that time, or such part of it as will bring him within the protection of this law, becomes a very important inquiry.

The plaintiff contended, at the trial, that, by becoming the tenant of Bordeaux, Willison the elder and his heirs, so long as they remain in possession, are prevented from setting up any title in themselves, or denying that of Bordeaux; without first surrendering to him the possession, and then bringing their suit. That the possession of the tenant being the possession of the landlord, he could do no act by which it could become adverse; so that the statute of limitations would begin to run in his favour, or operate to bar his claim, by any lapse of time; however long.

The defendant, on the other hand, contended, that from the time of the disclaimer of the tenancy by Willison, and the setting up of a title adverse to Bordeaux and with his knowledge, his possession became adverse, and that he could avail himself of the act of limitations if no suit was brought within five years thereafter.

It is an undoubted principle of law fully recognised by this court, that a tenant cannot dispute the title of his landlord, either by setting up a title in himself, or a third person, during the existence of the lease or tenancy. The principle of estoppel applies to the relation between them, and operates in its full force to prevent the tenant from violating that contract by which he obtained and holds possession. 7 Wheat. 535.

He cannot change the character of the tenure by his own act merely, so as to enable himself to hold against his landlord, who reposes under the security of the tenancy, believing the possession of the tenant to be his own, held under his title, and ready to be surrendered by its termination, by the lapse of time, or demand of possession. The same principle applies to mortgagor and mortgagee, trustee and cestui que trust, and generally to all cases where one man obtains possession of real estate belonging to another, by a recognition of his title. On all these subjects the law is too well settled to require illustration or reasoning, or to admit of a doubt. But we do not think, that in any of these relations, it has been adopted to the extent contended for in this case, which presents a disclaimer by a tenant with the knowledge of his landlord, and an unbroken possession afterwards for such a length of time that the act of limitations has run out four times before he has done any act to assert his right to the land. Few stronger cases than this can occur, and if the plaintiff can recover without any other evidence of title than a tenancy existing thirty years before suit brought, it must be conceded that no length of time, no disclaimer of tenancy by the tenant, and no implied acquiescence of the landlord, can protect a possession originally acquired under such a tenure.

If there is any case which could clearly illustrate the sound policy of acts of repose and quieting titles and possessions by the limitation of actions, it is in this. Here was no secret disclaimer, no undiscovered fraud; it was known to Bordeaux, and was notice to him that Willison meant to hold from that time by his own title and on adverse possession. This terminated the tenancy as to him, and from that time Bordeaux had a right to eject him as a trespasser. Adams on Eject. 118. Bull. N. P. 96. 6 Johns. Rep. 272.

Had there been a formal lease for a term not then expired, the lessee forfeited it by this act of hostility; had it been a lease at will from year to year, he was entitled to no notice to quit before an ejectment. The landlord's action would be as against a trespasser; as much so as if no relation had ever existed between them.

[*Willison vs. Watkins.*

Having thus a right to consider the lessee as a wrongdoer, holding adversely, we think that under the circumstances of this case the lessor was bound so to do. It would be an anomalous possession, which as to the rights of one party was adverse, and as to the other fiduciary, if after a disclaimer with the knowledge of the landlord and attornment to a third person, or setting up a title in himself, the tenant forfeits his possession and all the benefits of the lease he ought to be entitled to, such as result from his known adverse possession. No injury can be done the landlord unless by his own laches. If he sues within the period of the act of limitations he must recover : if he suffers the time to pass without suit, it is but the common case of any other party who loses his right by negligence and loss of time.

As to the assertion of his claim, the possession is as adverse and as open to his action, as one acquired originally by wrong ; and we cannot assent to the proposition that the possession shall assume such character as one party alone may choose to give it. The act is conclusive on the tenant. He cannot make his disclaimer and adverse claim, so as to protect himself during the unexpired term of the lease : he is a trespasser on him who has the legal title. The relation of landlord and tenant is dissolved, and each party is to stand upon his right.

It is on this principle alone that the plaintiff could claim to recover in this action. If there was between him and the defendant an existing tenancy at the time it was brought, he had no right of entry. The lessee cannot be a trespasser during the existence of the lease, and cannot be turned out till its termination. At the end of a definite term the lessor has his election to consider the lessee a trespasser and to enter on him by ejectment ; but if he suffers him to remain in possession, he becomes a tenant at will, or from year to year, and in either case is entitled to a notice to quit before the lessor can eject him. The notice terminates the term, and thenceforth the lessee is a wrongdoer and holds at his peril. Woodfall's Land. & Ten. 218, 220. 2 Serg. & Rawle, 49.

If the tenant disclaims the tenure, claims the fee adversely in right of a third person or his own, or attorns to another, his

possession then becomes a tortious one, by the forfeiture of his right. The landlord's right of entry is complete, and he may sue at any time within the period of limitation ; but he must lay his demise of a day subsequent to the termination of the tenancy, for before that he had no right of entry. By bringing his ejectment, he also affirms the tenancy and goes for the forfeiture. It shall not be permitted to the landlord to thus admit that there is no tenure subsisting between him and defendant which can protect his possession from his adversary suit, and at the same time recover on the ground of there being a tenure so strong that he cannot set up his own adversary possession.

The plaintiff claims without showing any title in himself, or any right of possession, except what exists from the consequences of a tenancy, the existence of which he denies in the most solemn manner, by asserting its termination before suit brought.

The principle here asserted is not new in this court. In the case of Blight's lessee *vs.* Rochester, 7 Wheat. 535, 549, the plaintiff's lessors claimed as heirs of John Dunlap : the defendant claimed by purchase from one Hunter, who professed to have purchased from Dunlap. The defendant acknowledged the title of Dunlap as the one under which he held. Dunlap had in fact no title ; but the plaintiffs insisted that the defendant could not deny his title. The Chief Justice, in giving the opinion of the court, observes : If he holds under an adversary title to Dunlap, his right to contest his title is admitted. If he claims under a sale from Dunlap, and Dunlap himself is compelled to aver that he does, then the plaintiffs themselves assert a title against this contract. Unless they show that it was conditional and that the condition is broken, they cannot, in the very act of disregarding it themselves, insist that it binds the defendant in good faith to acknowledge a title which has no real existence.

We are not aware that in applying this doctrine to the case now before the court we shall violate any settled principle of the common law.

If a different rule was established, the consequences would be very serious. A mortgagee, a direct purchaser from a

tenant, or one who buys his right at a sheriff's sale, assumes his relations to the landlord with all their legal consequences, and they are as much estopped from denying the tenancy. If no length of time would protect a possession originally acquired under a lease, it would be productive of evils truly alarming, and we must be convinced beyond a doubt that the law is so settled before we could give our sanction to such a doctrine.

An examination of the authorities on this point relieves our minds from all such apprehensions, by finding our opinion supported to its full extent by judicial decisions entitled to the highest respect, and which we may safely adopt as evidence of the common law.

The case of Hovenden *vs.* Lord Annesley was that of a tenant who had attorned to one claiming adversely to his lessor with his knowledge. In delivering his opinion, Lord Redesdale entered into a detailed view of the decisions on the application of the act of limitations to trusts of real and personal estate in courts of law and chancery, and to fiduciary possessions generally. On the point directly before us he observes : "That the attornment will not affect the title of the lessor so long as he has a right to consider the person holding possession as his tenant. But as he has a right to punish the acts of his tenant in disavowing the tenure by proceeding to eject him, notwithstanding his lease; if he will not proceed for the forfeiture, he has no right to affect the rights of third persons on the ground that the possession was destroyed, and there must be a limitation to this as well as every other demand. The intention of the act of limitations being to quiet the possession of lands, it would be curious if a tenant for ninety-nine years, attorning to a person insisting he was entitled, and disavowing tenure to the knowledge of his former landlord, should protect the title of the original lessor for the term of ninety-nine years. That would, I think, be too strong to hold on the ground of the possession being in the lessor, after the tenure had been disavowed to the knowledge of the lessor."

The relation between tenants in common is, in principle, very similar to that between lessor and lessee : the possession

of one is the possession of the other, while ever the tenure is acknowledged. Cowp. 217. But if one ousts the other, or denies the tenure, and receives the rents and profits to his exclusive use, his possession becomes adverse, and the act of limitations begins to run. 2 Scho. & Lef. 628, &c. and cases cited. 4 Serg. & Rawle, 570. The possession of a trustee is the possession of the cestui que trust, so long as the trust is acknowledged; but from the time of known disavowal it becomes adverse. So of a mortgagee, while he admits himself to be in as mortgagee, and therefore liable to redemption. 7 Johns. Cha. 114, &c. and cases cited. But if the right of redemption is not foreclosed within twenty years, the statute may be pleaded; and so in every case of an equitable title, not being the case of a trustee, whose possession is consistent with the title of the claimant. 7 Johns. Cha. 122.

After elaborately reviewing the English decisions on these and other analogous subjects, chancellor Kent remarks, it is easy to perceive that the doctrines here laid down are the same that govern courts of law in analogous cases, and the statute of limitations receives the same construction and application at law and in equity. Kane vs. Bloodgood, 7 Johns. Cha. 90, 122. It is equally said that fraud as well as trust are not within the statute, and it is well settled that the statute does not run until the discovery of the fraud; for the title to avoid it does not arise until then; and pending the concealment of it, the statute ought not to run. But after the discovery of the fact imputed as fraud, the statute runs as in other cases; and he cites in support of this position, 1 Browne's Parliament. Cases, 455. 3 P. Wms, 143. 2 Scho. & Lef. 607, 628, 636, and the cases cited.

In the case of Hughes vs. Edwards, 9 Wheat. 490, 497, it was settled that the right of a mortgagor to redeem is barred after twenty years possession by the mortgagee after forfeiture, no interest having been paid in the mean time, and no circumstance appearing to account for the neglect. 7 Johns. Cha. 122. 2 Sch. & Lef. 636. The court in that case say, that in respect to the mortgagee, who is seeking to foreclose the equity of redemption, the general rule is, that where the mortgagor has been permitted to remain in

possession, the mortgage will, after a length of time, be presumed to have been discharged by payment of the money or a release, unless circumstances can be shown sufficiently strong to repel the presumption; as payment of interest, a promise to pay, an acknowledgement by the mortgagor that the mortgage is still existing, or the like.

All these principles bear directly on the case now before us, they are well settled and unquestioned rules in all courts of law and equity, and necessarily lead to the same conclusion to which this court has arrived. The relations created by a lease are not more sacred than those of a trust or a mortgage. By setting up or attorning to a title adverse to his landlord, the tenant commits a fraud as much as by the breach of any other trust. Why then should not the statute protect him, as well as any other fraudulent trustee, from the time the fraud is discovered or known to the landlord? If he suffers the tenant to retain possession twenty years after a tenancy is disavowed, and cannot account for his delay in bringing his suit; why should he be exempted from the operation of the statute more than the mortgagor or the mortgagee? We can perceive no good reasons for allowing this peculiar and exclusive privilege to a lessor; we can find no rule of law or equity which makes it a matter of duty to do it, and have no hesitation in deciding that in this case the statute of limitations is a bar to the plaintiff's action.

In doing this we do not intend to dispute the principle of any case adjudged by the supreme court of South Carolina. Of those which have been cited in the argument there are none which in our opinion controvert any of the principles here laid down, or profess to be founded on any local usage, common law, or construction of the statute of limitations of that state. One has been much pressed upon us, as establishing a doctrine which would support the position of the plaintiff, which deserves some notice. In the case in 1 Nott & M'Cord, 374, the court decide, that where a defendant enters under a plaintiff, he shall not dispute his title while he remains in possession, and that he must first give up his possession, and bring his suit to try titles. To the correctness of this principle, we yield our assent, not as one professing to be peculiar to South

Carolina, but as a rule of the common law applicable to the cases of fiduciary possession before noticed. It is laid down as a general rule, embracing in terms tenants in common, trustees, mortgagees and lessees, but disallowing none of the exceptions or limitations which qualify it and exclude from its operation all cases where the possession has become adverse, where the party entitled to it does not enter or sue within the time of the statute of limitations, or give any good reason for his delay ; leaving the rule in full force wherever the suit is brought within the time prescribed by law. To this extent, and this only, the decision would reach. To carry it further would be giving a more universal application than the courts of South Carolina would seem to have intended, and further than we should be warranted by the rules of law. To extend it to cases of vendor and vendee would be in direct contradiction to the solemn decision in 7 Wheat. 525.

In relation to the limitation of actions for the recovery of real property, we think it proper to apply the remarks of the learned judge who delivered the opinion of this court in the case of Bell *vs.* Morrison, 1 Peters, 351, and to say that the statute ought to receive such a construction as will effectuate the beneficent objects which it intended to accomplish,—the security of titles, and the quieting of possessions. That which has been given to it in the present case is we think favourable to its true spirit and intention, without impairing any legal principle heretofore established.

It is therefore the opinion of the court that the plaintiff in error has sustained his fourth exception, and that the judgment of the circuit court must be reversed. The cause is remanded to the circuit court with directions to award a venire de novo.

Mr Justice JOHNSON.

Had I felt myself at liberty in the court below, to act upon my own impressions as to the general doctrine respecting the defence which a tenant might legally set up in ejectment brought against him by his landlord, I certainly should have left it to the jury to inquire, whether the possession of Willison ever was hostile to that of Bordeaux ; a fact, the evidence

to prove which was very trifling, as appears even in this bill of exceptions. But there were produced to me official reports of adjudged cases in that state, by the courts of the last resort, which appeared fully to establish that when once a tenancy was proved, the tenant could make no defence, but must restore possession, and then alone could he avail himself of a title derived from any source whatever, inconsistent with the relation of tenant. Now it ought not to be controverted, that, as to what are the laws of real estate in the respective states, the decisions of every other state in the union, or in the universe, are worth nothing against the decisions of the state where the land lies. On such a subject we have just as much right to repeal their statutes as to overrule their decisions.

I will repeat a few extracts from one of their decisions to show, that they will at least afford an apology for the opinion expressed in the bill of exceptions upon the law of South Carolina; for I placed it expressly on their decisions, not my own ideas of the general doctrine.

The case of Wilson vs. Weatherby, 1 Nott & M'Cord's Rep. 373, was an action to try title, just such as the present, and heard before Cheves, Justice, in July 1815. The defendant offered to go into evidence to show a title in himself, to which it was objected, that as he had gone into possession under the plaintiff, he could not dispute his title. The objection was sustained, and a verdict given for the plaintiff. The cause was then carried up to the appellate court, and the judgment below sustained, that court unanimously agreeing the law to be as laid down by the judge who delivered the opinion, in these terms: " The evidence offered by the defendant was *of a title acquired by him after he went into possession under the plaintiff, and before he gave up possession.* If he was at any time the tenant of the plaintiff, he continues so all the time, *unless he had given up the possession.* The attempt to evade the rule of law by going out of possession a moment, and then returning into possession, did not change his situation at all, and especially as he left another person in possession, so that his possession was altogether unbroken. A distinct and bona fide abandonment of the posses-

[Willison vs. Watkins.]

sion at least was necessary to have put him in a situation to dispute the plaintiff's title. On the last ground, that the defendant was not at any time the tenant of the plaintiff, the defendant was not indeed a tenant under a lease rendering rent, but he nevertheless held under the plaintiff. This ground is founded on a misconception of the principle, which is not confined to the cases of tenants in the common acceptation of the term. These cases have only furnished examples of the application of the principle, which is, that wherever a defendant has entered into possession under the plaintiff, *he shall not be permitted, while he remains in possession,* to dispute the plaintiff's title. He has a right to purchase any title he pleases, but he is bound, *bona fide, to give up possession,* and to bring his action on his title, and recover by the strength of his own title."

This is the leading case upon this doctrine in that state, and it is fully settled there, that the wife, the executor, the heir or the purchaser at sheriff's sale, is identified in interest with the previous possessor; as also that a statutory title is acquired by possession, under which one subsequently going out of possession, may recover.

Understanding such to be the law of that state, I certainly did not hold myself bound or at liberty to inquire whether it accorded with the rules of decision in any other state. In principle, I am under the impression there is not much difference, or at least not more than that court was at large to disregard if they thought proper.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of South Carolina, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo.