Dunkin, Ch.,
dissentiente. The defendant, and those under whom he holds, have been in the actual, exclusive possession of the premises, claiming it as their own, for more than twenty years consecutively, prior to the institution of these proceedings. In Riddlehoover vs. Kinard, 1 Hill, Ch. 376, itis stated that after twenty years’ possession, the Court will presume a grant from the State, payment of a legacy, ouster of a tenant in common, satisfaction of a mortgage, or almost anything which is necessary to secure the possession and quiet the title. In Watkins vs. Willison, 3 Peters, 43, the doctrine was held to apply as between the original mortgagor and mortgagee. In order to give effect to this presumption, it was ruled in Rogers vs. McLeod, 2 Rich. 22, and repeated in Thomas vs. Peake, 7 Rich. 355, that the possession of the several successive alienees may be tacked. The language in the latter case is: “The fact of possession for more than twenty years in the various persons successively occupying the land, though not for that time in any one, is enough to raise the presumtion of a grant.”
So that to entitle him to the benefit of this presumption, the defendant is regarded as having become the purchaser in 1831, and having held possession from that time. After twenty years the presumption is absolute and requires no circumstances to support it. After that time the onus of proof is on those who seek to repel the presumption. As'between the morgagor and mortgagee, as between debtor and creditor, an acknowledgment of the debt, as it will repel the presumption of payment, will preserve the lien of the mortgage. But as between the mortgagee and the alienee of the mortgagor, no debt exists. If the mortgaged premises prove insufficient, no one pretends that the alienee of the mortgagor is liable for the deficiency. The mortgagee had a lien upon the premises and nothing more. After twenty years possession by the alienee, this lien is presumed to be satisfied, although the debt may still be a subsisting demand, as between the debtor and creditor, mortgagor and mortgagee. This may be illus *599 trated by a transaction of very common occurrence. A bank, or any other creditor, holds a mortgage of ten lots in the city of Charleston to secure payment of a debt. The debtor, desirous of selling one of the lots, in order to perfect a title, procured a release from the bank of the lien on this lot, either in consideration of receiving the purchase money, or because the bank is satisfied with the security of the remaining nine lots, which are still subject to the mortgage. As between the bank and the debtor the debt subsists, but the lien of the mortgage on the tenth lot is released and gone. Now, after an uninterrupted possession of twenty years by the purchaser of the tenth lot, the law presumes this release on the part of the bank, although no proof of an actual release can be produced; nay, although the Court may believe that no such release was, in fact, executed. If the defendant, in 1831, had executed a mortgage of his own land to Pamela Gunning to secure the bond of Robt. Kennedy, and no proceeding were had for more than twenty years, a release of the lien would be presumed, although as between the creditor and the principal the debt may be preserved by recent acknowledgments. (Even if the defendant had become surety on the bond, after a lapse of twfenty years, and no acknowledgment on his part, he is entitled to the benefit of the presumption, notwithstanding intervening acknowledgments on the part of his principal.) Some of the decisions arising out of the peculiar provisions of the Act of 1791, have been the subject of criticism, as will be seen from the judgment of Chancellor Harper in Thayer vs. Davidson, Bail. Eq. 412. But the only case cited from our books to preclude the defendant from the protection afforded by lapse of time, is Nixon vs. Bynum, 1 Bail. 148. Nor is that decision necessarily inconsistent with these principles when the facts are scrutinized. Until within eleven years of the institution of the proceedings, the premises had been in possession of the mortgagor and his devisee, Thomas J. Howell. By the stat. 3 and 4 W. and M. c. 14, (P. L. 87,) *600 even prior to 5 Geo. 2, c. 7, Thomas J. Howell might have been sued at law on the bond of his father, the testator. He was the debtor of the obligee, and he and the heir, by the provisions of the Act 3 and 4 W. and M., could be united in the same suit at law. Under these circumstances it might well be that the devisee could neither avail himself of the statute of limitations or the presumption arising from lapse of time; and, as has been already stated, his alienee, Bynum, had only a possession of eleven years. But upon the principle now advanced, a purchaser who has been in quiet possession fora longer period than would bar a writ of right in Westminster Hall, might be turned out of his freehold by an outstanding incumbrance of which he. had never, in fact, heard, notwithstanding the presumed notice from registration, a notice (it may be remarked) which very able jurists have held not to deprive him of the benefit of his possession, but only to preclude him from the plea of purchaser for valuable consideration, without notice. See Thayer vs. Davidson, ut supra, and Drayton vs. Marshall, Rice, Eq. 393. It is a misapprehension to suppose that the defendant’s title is derived through Robert Robinson, or that Robert Robinson ever made any payment, except on the execution against Woods administrator of Robt. Kennedy, Robinson being surety on the administration bond. Robt. Kennedy, the mortgagor, conveyed to John Kennedy in 1831 — he to Coleman and wife, and defendant holds under their conveyance. The payments by Robinson were in 1842-3-4.
But in another point of view it is to be feared injustice has been done to the defendant. In 1837, fifteen years prior to the institution of these proceedings, the heirs and distributees of Robt. Kennedy (the obligor in the bond) filed a bill against the administrators for an account, and by the report of the Commissioner 24th August, 1S37, it appeared that, after making allowance for the payment of this particular debt, set down at $2,895 30, and also of all the other creditors of the *601 intestate, a balance remained in the hands of the administrators for distribution, of $433 10, and this report was confirmed by the Court.
The creditors were not parties, nor was it necessary that they should he. It was also proved that, in the same year, the heirs of Robert Kennedy sold, portions of his real estate. The parties all resided in the village of Chester. In Valk vs. Vernon, 2 Hill, Ch. 257, which was a bill by a creditor to charge the real estate of his debtor in the possession of his devisee, Chancellor Harper, adverting to -the propriety of making the personal representative a party in such case, refers it to the principle, that the Court of Equity in all cases delights to do complete justice, and not by halves, as first to decree the heir to perform this covenant, and then to put the heir to another bill against the executor to .reimburse himself out of the personal assets, which may be more than sufficient to answer the covenant; and where the executor and heir aré both before the Court, complete justice may be done by decreeing the executor to pay as far as the personal assets wjll extend, the rest to be made good by the heir out of the real estate. In ordinary cases it may be inconvenient and a hardship upon the creditor to delay him in the enforcement of his mortgage until an account be taken with his executor. But, in Goodhue vs. Barnwell, Rice Eq. 198, the principle was fully recognized that if the creditor stands by and suffers the personal representative to misapply or squander the assets, he is not entitled to recover against the heir. It cannot be supposed that the defendant in this case is in any worse condition Pending the proceeding against him to foreclose this mortgage, he filed what he entitled a cross bill against the plaintiff as well as against the administrators of Robert Kennedy and the surety on their bond. The object was, among other things, to shew that the debt was paid, or ought to. have been paid, from the personal estate of the obligor, and, in any event, to have complete justice done by directing payment, in the first *602 instance, by those primarily liable, and only resort to the defendant in the event of a deficiency. This bill was dismissed by the Chancellor, and this judgment forms one of the grounds of appeal.
The whole case was referred to the Court of Errors in order to give the defendant the benefit of this ground. I think the defendant should have been allowed the opportunity of presenting his equities as arising under this bill, and that the past delay of the plaintiff in enforcing his rights against the real debtor, or his assets, precludes him from insisting on a decree against the defendant until an investigation has been made and the equities adjusted.
In respect to the mode of calculating interest 1 should concur in the judgment of the circuit Chancellor.