<hr />

## TRUSTEES v. JENNINGS.

1. APPEAL—FACTS.—On appeal in a law case, only errors of law can be reviewed by this court.

2. LEASE—FORFEITURE—NOTICE—ACTION—PRESUMPTIONS—CASES CRITICISED. A lease of land was made for seventy-five years, by deed duly recorded, on the consideration of the prepayment of a sum in gross, the lease containing no covenant as to assignment, sub-leases, or surrender of possession at its termination. Pending this lease, a purchaser thereof in possession of the land undertook to convey the land in fee simple, and it thereafter passed under deeds purporting to convey the land in fee simple down to the defendant in this action, all of these deeds being duly recorded. These parties all had actual possession, and valuable improvements were erected on the land. In action brought by the lessor, within two years after termination of this lease, for the recovery of this land, *held*, that as the claim of seizin is inconsistent with tenancy, the conveyance in fee simple by one who had only the rights of a lessee, wrought a forfeiture of the lease, and the landlord became thereupon entitled to regain at once possession of the leased premises, and the landlord not having taken any action for more than twenty years after such forfeiture, he was not barred by the statute of limitations, but the adverse possession for that length of time

by the successive possessors raised a legal presumption of a grant in fee simple to those under whom defendant claims, that may be rebutted only by positive proof. The rule as to the character of the presumption in such cases, as laid down in Smith v. Asbell, 2 Strob., 146, approved. MR. JUSTICE McGOWAN concurred under the authority of decided cases, and MR. CHIEF JUSTICE McIVER concurred in the result under the authority of Trustees v. Meetze, 4 Rich., 50, and of the finding of fact by the verdict of the jury, that the landlord had actual notice of the conveyances in fee.

3. REFUSAL OF NEW TRIAL in a law case on questions of fact is not reviewable on appeal.

4. PETITION FOR REHEARING—SUBSEQUENT RECORDS.—The record of subsequent deeds does not seem to affect one whose rights depend on a prior deed duly recorded.

Before ALDRICH, J., Greenville, December, 1892.

Action by trustees of Wadsworthville Poor School against L. I. Jennings. The opinion states the case.

*Mr. J. A. McCullough,* for appellant.

*Messrs. Cothran, Wells, Ansell & Cothran,* and *Haynsworth & Parker,* contra.

November 29, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. Under the will of Thomas Wadsworth, who died in 1791, while a citizen of Charleston, in this State, certain lands within the limits of this commonwealth were devised to trustees to maintain and support a free school for poor children residing within the limits of Major Dunlap's Battalion of the Saluda Regiment within Laurens County. The General Assembly of this State, appreciating the spirit of this devisor, and the better to protect these lands from the rapacity and cupidity of those persons who would likely seek an advantage of the trustees under this will, passed an act, on the 14th day of December, 1805, whereby these lands were relieved from the operation of the act of limitation. See 5 Stat., 496. Again, at the request of the trustees under the will of Mr. Wadsworth, the General Assembly, on the 20th day of December, 1810, passed an act whereby these trustees and their successors in office were incorporated by the name of the "Trustees of the

Wadsworthville Poor School," with the usual privileges enjoyed by similar corporations.  See 5 Stat., 621.

This corporation thus created, on the 15th day of April, 1818, leased 330 acres of the land devised under the will of Thomas Wadsworth unto one Thomas G. Walker, for the term of seventy-five years, the same beginning on the 12th day of December, 1815, and ending on the 12th day of December, 1890.  This lease was for valuable consideration, and was by a deed therefor, which deed of lease was duly recorded in the office of the register of mesne conveyance for Greenville District (now county), where the said leased land was situated.  This lease was by Thomas G. Walker assigned to one David McNeely on the 19th October, 1821, and David McNeely assigned the same to one John P. Pool on the 15th day of February, 1847.  Afterwards John P. Pool, by his deed therefor, conveyed 100 acres in fee simple, as it is agreed by the parties to this appeal, to Fagin E. Martin, but in the deed itself recited all the foregoing facts, and this deed was duly recorded in the office of the register of mesne conveyance on 30th January, 1850.  Under a judgment against Fagin E. Martin, this land was sold as Martin's property, 6th January, 1857, by the sheriff of Greenville District to Charles J. Elford.  After Mr. Elford's death, and in the settlement of his estate, this land was sold and conveyed by the commissioner in equity to Beeco on the 7th October, 1867.  Beeco sold and conveyed to Choice, January 21st, 1876.  Choice sold and conveyed to Davis, January 21st, 1876.  Davis sold and conveyed to Kennemore and Tate, December 4th, 1879.  Kennemore purchased by deed therefor Tate's interest.  Kennemore sold and conveyed a part of the land to McGee, 1st January, 1891.  McGee sold his part by deed therefor to L. I. Jennings, on 23d February, 1891.  Kennemore sold his part by deed to L. I. Jennings, on 23d February, 1891.  All these several deeds were duly recorded in the office of the register of mesne conveyance for Greenville County.

On the 25th day of April, 1892, in the Court of Common Pleas for Greenville County, the plaintiff, the trustees of the Wadsworthville Poor School, brought an action against the defendant, L. I. Jennings, to recover 62¼ acres of the land, and

in the complaint disclosed plaintiff's title, the lease and its termination, demanding the recovery of the land, and two hun-dred dollars as rents and profits. The defendant, in his answer, admitted the possession of the land in controversy, but denied plaintiff's title and right to recover land, or rents and profits; further, that beginning on the 4th December, 1879, he had been in the exclusive and continuous possession of the land sued for, claiming the same as his own adversely to the plaintiff and all the world; further, that he, and those under whom he claims, had been in the continuous adverse possession of the premises for forty years, claiming the same as their own, and holding adversely to the whole world; further, purchaser for valuable consideration without notice and adverse possession thereunder for more than ten years; that Kennemore, through whom he claimed, had made valuable improvements, in value one thousand dollars, and that he believed he had a good title in fee in said premises, which sum he claims of the plaintiff; and, lastly, that the defendant, and those under whom he claims, have had exclusive, adverse, and continuous possession of the premises in dispute, claiming a fee simple title against all the world for over twenty years.

On the 3d day of December, 1892, the action came on for trial before Judge Aldrich and a jury, in the Court of Com-mon Pleas at Greenville, when a verdict was rendered for the defendant. After a verdict had been found for defendant, plaintiff moved for a new trial upon the minutes. This mo-tion being denied, a judgment was duly entered, from which the plaintiff now appeals upon the following grounds:

1. Because the presiding judge erred in instructing the jury: "That if one or more of these purchasers from Walker took a fee simple deed and went into possession of it, claiming that he had the entire and exclusive right to that land, went into it and took possession of it under such deed, and make it known, or this fact became known, to the trustees, the plain-tiff here, then their title by adverse possession began to run;" whereas, he should have charged, as argued by the plaintiff, (*a*) That neither Walker, nor any one claiming through him, could plead adverse possession during the term of the afore-

said lease. (*b*) That by reason of the act suspending the statute of limitations as to these lands, no person could plead, as against the plaintiff, title by adverse possession. (*c*) That before the said Walker, or any one claiming through him, could avail themselves of title by prescription or presumption, they would have to show that their holding was not permissive, and this they could not do during the term of the aforesaid lease, and (*d*) That in no case can a tenant dispute the title of his landlord, until he has surrendered possession of the lands to his landlord, giving clear and unequivocal notice of his intention to hold adversely, and re-enter in his new capacity; not until then would he begin to hold adverse.

2. Because his honor erred in instructing the jury: "If the plaintiffs had notice of it, that there was somebody in possession of their lands, claiming it as his own, they had a right to bring their action against him as trespasser, and if they had a right to sue him and he was not sued, and they allowed him to stay there for forty years, that trespass would ripen into a good title." Because (*a*) plaintiff could not bring action of ejectment until the termination of the said lease. (*b*) If plaintiff had had such cause of action, that would not convert the holding of the party in possession under that lease from permissive to adverse. (*c*) There could be no such adverse holding of these lands as could ripen into title. (*d*) Walker and all claiming through him were estopped from disputing plaintiff's title.

3. Because his honor erred in charging the jury: "Did Jennings, or any one of his ancestors, go in there and take possession under that title, and was that fact known to the trustees? If the trustees knew that such a party was in possession of that land claiming a title adverse to them, they should have acted, and if they stood by for twenty or forty years, they slept on their rights." Because (*a*) the said law was wholly inapplicable to the facts proven in this case, inasmuch as there was no proof whatever, either on the part of plaintiff or defendant, that the plaintiff knew at any time that there was any person in possession of these lands holding adverse to them. (*b*) They were not estopped from suing for the said lands at any time.

4. His honor erred in charging the jury, that the defendant Jennings could avail himself by way of purchase of any right, title, or interest any one through whom he claimed might have had by adverse possession; because (*a*) a person, to avail himself of the plea of title by adverse possession or prescription, must show that he, as well as those through whom he claims, held adversely.

5. His honor erred in instructing the jury as law applicable to this case: ''If one goes into possession of land under color of title, or acquires possession of land, and holds it for twenty years, or when a man has possession of lands, and holds it for four or five years, and he conveys it to another, who holds it under his title, and so on for twenty years, and you establish a continuous holding for twenty years, if that possession and title was continuous and adverse, as it states here, for the period of forty years or twenty years, that would presume a grant;'' because (*a*) there was no room for any such presumptions in this case.

6. Because the charge of his honor was not only erroneous, but conflicting, confusing, and misleading, inasmuch as he instructed the jury in one portion of his charge, that a tenant would have to yield to his landlord the possession of his lands before he could hold adverse to him, and after having charged that those taking under Walker took subject to his rights and disabilities, in a subsequent portion thereof he charged that if Jennings or any of his ancestors went into possession of that land under fee simple deed, or held it adversely, and the plaintiff knew of that fact, the statute would begin to run against the plaintiff.

7. Because the Circuit Judge erred in refusing plaintiff's motion for a new trial, as the verdict of the jury was without a jot or tittle of evidence to support it.

It now remains that we should present our conclusions upon the several grounds of appeal. It being an appeal from the law side of the court below, we are, by law, confined to errors of law in the Circuit Judge, and these errors are confined to his charge to the jury, there being no excep-

tions to any refusal by the judge to charge any requests on either side.

We have devoted unusual care to the investigation of the principles of the law of real property in this State, for the discussion of the several questions by the respective parties to this appeal have made such a course on our part necessary by reason of the ability and research of counsel here engaged. Time will not allow us to reproduce the law which was consulted in such investigation in this opinion. To admit that, at times, we were doubtful whether the Circuit Judge had not erred in some of his instructions to the jury, we freely admit. A careful comparison of the views of the Circuit Judge with those embodied in the judgments of our own court of last resort in previous similar cases have enabled us to reach a conclusion in accord with that expressed by the Circuit Judge.

In his charge to the jury in the case at bar by the Circuit Judge, and from which there is no appeal, the deed from the plaintiff corporation under which Thomas G. Walker obtained possession of the land in dispute, was declared to be a lease for a term of years, which expired on the 12th day of December, 1890. This lease was duly recorded in the office of the register of mesne conveyance for Greenville County, wherein the land was situated, in 1823, many years before any rights of the defendant, or those through whom he claims, originated. There can be no question but that a lessee is precluded from a denial of the title of his landlord. Indeed, the possession of the lessee is that of his landlord; it is permissive and not adverse. It is equally certain that, under the law, the lessee has no *seisin* of the land, and without *seisin*, either actual or constructive, there can be no title to land. A lessee has no estate in the lands demised to him; his term, under the law, is but a *chose in action*, or chattel interest. The right of the landlord, as against the lessee or his assigns, to obtain possession of the lands demised, must usually be preceded by an entry thereon. It is in regard to this right of entry by the landlord during the continuance of the lease, that so much legal learning has been employed during the last centuries. Herein are involved the doctrines of forfeitures arising

from the breach of conditions or covenants contained in the lease, or such covenants running with the land as the law itself implies.

In the case at bar, the lease expresses no covenants by the lessee.  The single covenant is by the plaintiff corporation, whereby possession of the leased premises to Walker, his executors and assigns, is warranted during the term.  There is no restriction upon Walker, the original lessee, to assign or sublet the term.  Accordingly he does assign the lease, and by successive assignments, duly made, the lease vests in John P. Pool.  By the Case, it is agreed that Pool, by deed in fee simple, conveyed this leased land to one Fagin E. Martin in the year 1850, and that such deed was duly recorded in the office of the register of mese couveyance for Greenville County (then district), and that the said Martin entered into possession under such deed.  We would remark, in passing, that we do not mean to commit ourselves to the construction of this deed as amounting to one in fee simple ; for of this we may doubt whether, in strictness of law, in view of its terms, anything more than an assignment of the original lease was contemplated or expressed by the parties. The parties to the appeal, however, have stipulated that the terms of this deed were those usual in one conveying an estate in fee simple, and we suppose we are bound to give effect to their agreements, and this we the more readily do inasmuch as the entire deed is not exhibited in the case.  In 1857, C. J. Elford, at sheriff's sale, purchased Martin's entire estate in the land.  His deed therefor was duly recorded.  Elford that year, 1857, conveyed to one Thomas H. Cole as in fee simple.  This deed was duly recorded.  Said Cole reconveyed to ·Elford by deed in fee simple in 1867, which deed was duly recorded. Elford having died in the year 1867, the Court of Equity, under a bill filed by his widow and executrix, as complainant, against his heirs at law and creditors, as defendants, sold the lands, and a deed in the form of a fee simple deed was made to the purchaser, one Miles R. Beeco, for this land, which deed was duly recorded.  Beeco entered into possession under his deed.  And so deeds in fee simple were made from purchaser to purchaser, successively, until title rested in the present defendant.  Val-

uable improvements were placed upon the premises by one of the intermediate purchasers.

It is contended by the appellant, that inasmuch as he has traced title to himself, and thereafter, by lease, the possession of the lands to one Walker, whose assignment was traced as far and into one John P. Pool, that although Pool conveyed by a deed in fee simple to one Fagan E. Martin (from whom such possession was derived by others, successively, by deeds in fee simple down to the defendant), that the possession of defendant is plaintiff's possession, and he is entitled to recover, the lease having expired before action brought. To establish this proposition, he maintains most earnestly, that, as by the terms of the original lease, Walker was allowed to assign his term, and did actually do so, that such assignee was by operation of law bound to hold possession for the original landlord. Such does seem to be the law governing leasehold estates. This distinction exists between a subletting and an assignment of the lease : If a lessee *sublets*, his tenant is bound to his lessor, but if a lessee *assigns* the lease, then the original lessee is evolved, and the relation of landlord and tenant subsists between the owner as landlord and the assignee as lessee, subject to all the provisions of the original lease.

By an examination of the lease in the case at bar, it will be found that no covenant is expressed, that possession will be surrendered by the lessee or his assignee to the landlord at the expiration of the lease, to wit, on the 12th day of December, 1890. On investigation, we find that it is an open question in this country, whether a covenant running with the land, to surrender the demised land at the end of the term in the hands of an assignee, when the lease contains no such covenant, is implied by law. So it was held in Massachusetts (*Sargent* v. *Smith*, 12 Gray, 428), though an English case holds directly, that such a covenant is not implied by law. *Doe* v. *Seaton*, 2 Cromp. M. & R., 730. Still, it is settled law, that at the expiration of the term the landlord may regain possession of his lands on demand if he can, by suit if he must. Hence, it would seem that the appellant can maintain this proposition. The authorities directly hold that a lessee can legally only assign

such an interest as is covered by his lease, and that this is true, no matter what may be the form of the deed whereby he (the lessee) conveys. Mr. Tyler, in his work on Ejectment and Adverse Possession, at page 208, says: "When the relation of landlord and tenant is once established, it attaches to all persons who succeed to the possession of the premises through or under the first tenant; and they are all as much bound by the covenants and agreements of the original lessee as though they were their own." Again, at page 881, the same author holds: "And the rule, that where the relation of landlord and tenant exists, a conveyance by the latter of the demised premises cannot operate as the basis for an adverse possession, so as to bar the former of his ejectment, means the conventional relation of landlord and tenant, when some rent or return is in fact reserved to the former, not a relation arising from mere operation of law; as where one makes a grant, and by the omission of the technical word *heirs*, an estate for life only passes." So, too, Mr. Washburn, in his work on the Law of Real Property, at page 486, says: "So if a tenant under a lease were to convey the estate in fee to a third party, he would have no better right to contest the title of the lessor than the lessee himself." Mr. Angell, in his work on Limitations, thus states the rule, page 456: "It seems to be also settled, that when the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely; and that a succeeding tenant is as much disqualified to set up his possession against the original landlord as the first tenant."

Nor do we perceive any difficulty to the plaintiff corporation by the purchase by Elford, at sheriff's sale, of Fagan E. Martin's interest in the land, for unquestionably if Martin, as assignee of the lease, held the lands in question as a tenant to the original landlord (the plaintiff corporation), the sheriff could only legally convey such an estate as was in Martin, and Elford would, by his purchase, assume all the relations to the landlord, with all their legal consequences, and is estopped from denying the tenancy. *Willison* v. *Watkins*, 3 Peters, 50.

With all these concessions, however, the appellant does not find his way clear to a recovery, for such provisions only apply

12—40

to a continuous, unbroken tenancy, wherein the relation of landlord and tenant subsists, as such, in law and fact, to those instances where an adverse use of the leased premises do not operate as a bar to their recovery by the landlord. The appellant, with ability, contends that in order to enable a tenant to controvert his landlord's title, he must first deliver up possession of the leased premises to his landlord; that the tenant cannot disclaim his tenancy, or put himself in the position of an adverse claimant, or originate in another any such adverse holding, while the tenant withholds possession from his landlord. Indeed, he goes so far as to suggest that the doctrine of disclaimer, and also surrender by parol, can never be applied to the relation of landlord and tenant created by deed, but that such doctrines only apply to such instances as tenancies at will, or such as are created by parol. He cites the cases of *Love* v. *Dennis,* Harper, 70; *Whaley* v. *Whaley,* 1 Speer, 225; *Syme* v. *Sanders,* 4 Strob., 196; *Welson* v. *Weathersby,* 1 Nott & McC., 373; *Williams* v. *Morris,* 95 U. S., 414; *Floyd* v. *Mintsey,* 7 Rich., 188; *Thomson* v. *Peake,* 7 Rich., 353. It must be admitted that these cases are instances of tenancies not created by deed. He would include, also, *Willison* v. *Watkins, supra,* and *Zeller's Lessee* v. *Eckert,* 4 Howard, 284; but, as we remember these two cases last cited, in the former possession was obtained by Willison under a power of attorney from the owner, and, in the latter, possession was derived by devisor's widow under a provision of her husband's will by which he devised the fee to his son, but carved out an estate for years for his widow; and in both these cases the U. S. Supreme Court sustained the title of the tenant, and those claiming under him, under a disclaimer of landlord's title and other circumstances.

Under the view we take of the law of this State governing cases of the character of that at bar, we are not left to deal with all these refinements of the law; for we take it that it is now fully established that wherever the relation of landlord and tenant is terminated by any hostile act, such as the conveyance of the lands demised to the tenant for years, during such term, to another in fee simple, it becomes the bounden duty of the landlord to protect his title by regaining possession;

that the statute of limitations cuts no figure as affording a protection against the rights of the landlord, for the simple reason that statutes of limitations only apply to those instances where the possession is tortious *ab initio*, whereas, in the other instance we shall hereafter unfold, the possession *ab initio* is not tortious. It need not be that the first possession shall be under deed, though in the case at bar it was so. The theory of the law, in such cases, is that the possession of the land is such as includes a *seisin* of the premises, and such *seisin* in the person in possession of the land is incompatible with possession as a tenant, and after the lapse of twenty years, such possession under a claim of title will draw to it the presumption of a grant from the true owner in fee. Of course, this possession must be adverse, open, continuous.

The court of last resort in this State, in an action wherein the present plaintiff corporation was plaintiff (*The Trustees of the Wadsworthville Poor School* v. *Meetze,* 4 Rich., 50), held that the deed of Rall, the lessee of plaintiff, whereby he conveyed the land demised to him unto Meetze by a fee simple deed, was a disclaimer of Rall's tenancy, and the plaintiff might have sued without notice to quit and before the termination of the lease; but in the case cited Meetze failed in his defence, because the twenty years had not elapsed since the making of the deed from Rall to him. The doctrine of presumption of title arising from great lapse of time, twenty years or more, has been recognized and enforced in this State for many years and in many cases. *McClure* v. *Hill,* 2 Mill Con. R., 425; *Smith* v. *Asbell,* 2 Strob., 141; *McLeod* v. *Rogers & Gardner,* 2 Rich., 22; *Trustees of Wadsworthville Poor School* v. *McCully,* 11 Rich., 429; *Thompson* v. *Brannon,* 14 S. C., 552. In the case in 11 Rich., 429, Judge Wardlaw, in delivering the opinion of the court, amongst other things, said: "The presumption is founded upon the supposed acquiescence of the person shown to have been the former owner, and infers such transfer of his right as legalized the enjoyment." But it is apprehended that the presumption need not necessarily be founded upon the supposed acquiescence of the person shown to have been the former owner; it may be bottomed upon the

presumption of any other title to the premises, which could, by being united to possession, give good title to lands.

It may be well to notice the distinction as to the extent and effect of this presumption, as drawn by Judge Wardlaw in the case in 11 Rich., 429, and that on the same subject by Judge Evans in *Smith* v. *Asbell*, 2 Strob., 146. Judge Wardlaw seems to give force to the presumption as one of fact, that, by operation of law, has acquired such an artificial force that the jury may be instructed to allow it a controlling influence. His words in this connection are : ''The presumption of title arising from long continued possession, unquestioned and unexplained, was not held to be a presumption *juris et de jure*, irrebutable, such as the court might make, nor even one that the jury were bound to make without regard to the circumstances which contradicted it; but it was considered a presumption of fact, to which an artificial force is ascribed by the law, and which the jury were recommended to make, not because they believed the fact, but because it is wise and expedient to respect what is consecrated by time, and to give the same measure to all in the same condition, by giving effect to the fixed period of twenty years as a rule, instead of producing the uncertainty and inequality which must result from the various impressions which circumstantial evidence makes upon various minds. See *McClure* v. *Hill*, 2 Mills, 425; 12 Ves., 266. This presumption is like the presumption of the payment of a bond after twenty years unexplained, and like the presumption of right that arises from the enjoyment of an easement for twenty years.''

Judge Evans, in the case cited from 2 Strob., 146, said : ''In the elementary books (see Stark. Evid., pt. 4, 1240), presumptions are said to be of three kinds : First. Presumptions of law, which correspond with the *presumptio juris et de jure* of the civilians. These are conclusive, and cannot be rebutted. Second. Presumptions of law and fact. These are like the *presumptio juris* of the civil law. Of these, the presumption of payment of a bond or of a grant after twenty years, is an illustration. The third kind are presumptions of fact, and are mere inferences calculated to produce belief, and have no legal efficacy beyond their tendency to satisfy the mind of the truth of

the alleged fact. * * * But presumptions of law are like the statutes of limitations. They are artificial rules, which have a legal effect independent of any belief, and stand in the place of proof until the contrary be shown. The presumption in the case under consideration, if it exists, belongs to this class, and the question we are to decide is, whether there was anything in the case which required of the Circuit Court the instruction to the jury that they might presume the existence of the deed in question. The rule laid down in *McClure* v. *Hill*, 2 Mill Con. R., 420, is that a continuous, adverse possession of twenty years raises the presumption of a grant in the absence of any of those facts which go to rebut the presumption. This rule has been followed in all the subsequent cases. * * * The facts necessary to authorize the presumption are that the possession was adverse, and that it was continuous for twenty years."

The distinction between the views of these two judges, both eminent and safe advisers, seems to us to consist in this—that Judge Wardlaw seems to leave it as a fact to be treated of by the jury as they may deem best; or, in other words, that the jury are at liberty to disregard it in making up their verdict. Not so with Judge Evans; for if the presumption is not rebutted by proof of facts that negatives its existence, the jury must accept it as conclusive in an issue of title. It seems to us the views of Judge Evans are more consistent than those of Judge Wardlaw, for if the presumption arises from possession for twenty years, which is adverse, open, and continuous during those years, and which presumption is not rebutted by proof of any facts, it should be regarded as a rule of law, and not, therefore, to be disregarded by the jury. By this course the same measure is meted out to all alike.

The propriety of such a rule is very well set forth in the opinion of Mr. Justice Baldwin in *Willison* v. *Watkins*, 3 Peters, 52–53, who—having referred to the cases of mortgagor retaining possession after breach of condition, the cases of tenants in common, where one tenant, whose possession was for all other tenants in common, denies the tenure, ousts the other tenants, and receives all the rents and profits to his own exclusive use,

and also trustees who disavow their trusts, and those cases of fraud after its discovery—then said: "All these principles bear directly on the case now before us; they are well settled and unquestioned rules in all courts of law and equity, and necessarily lead to the same conclusion to which this court has arrived. The relations created by a lease are not more sacred than those of a trust or of a mortgage. By setting up or attorning to a title adverse to his landlord, the tenant commits a fraud as much as by the breach of any other trust. Why, then, should the statute not protect him as well as any other fraudulent trustee, from the time the fraud is discovered or known to the landlord? If he suffers the tenant to retain possession twenty years after a tenancy is disavowed, and cannot account for his delay in bringing his suit, why should he be exempted from the operation of the statute more than the mortgagor or the mortgagee? We can perceive no good reasons for allowing this peculiar and exclusive privilege to a lessor; we can find no rule of law or equity which makes it a matter of duty to do it, and have no hesitation in deciding that in this case the statute of limitations is a bar to the plaintiff's action."

Before going further, it may be well to recur a moment to the proposition of law regulating the force and effect of presumptions; for in that connection we remarked that they were rebuttable by proof of facts inconsistent with such presumptions. We mean that, if, when such a presumption is relied upon, it is proved that during the pendency of the lease, and during the period of time claimed to raise the presumption, any admission of title in the landlord, such as the payment of rent, or like circumstance, can be proved, it will rebut such presumption—any proof, in fact, that negatives the *adverse* holding and its continuity, will defeat the presumption.

As before remarked, the legislature of this State has prevented any plea of the statute of limitations to defeat the plaintiff-corporation's rights in these Wadsworth lands, but by two decisions of the court of last resort in this State, and to both of which actions this plaintiff-corporation was party plaintiff (we refer to *Trustees of Wadsworthville Poor School* v.

*Meetze, supra,* 4 Rich., 50, and to *Trustees of Wadsworthville Poor School* v. *McCully, supra,* 11 Rich., 429), it was held, that although the statute of limitations could not be pleaded to bar such plaintiff-corporation, yet that the legislature did not interdict the defence of the presumption of title or grant arising from twenty years' adverse, open, and continuous possession, which was not rebutted by proof of facts inconsistent with such presumption. In the latter case, just cited, it was held : "The presumption is independent of the statute of limitations ; it applies to subjects not within the statute, and it depends upon principles which would operate if there was no such statute. * * * The period of twenty years was originally adopted in analogy to the English statute of limitations ; but it has no connection with our statute. It would be a great stretch of the special indulgence given by the suspending act, to say that thereby the plaintiff was not only shielded against the effect of ten years possession (five in 1805), but was indemnified against all the effect of time and acquiescence."

Again, it has seemed to us that the character of this adverse holding, originating in the possession of the premises under a deed purporting to convey these premises in fee simple, and promptly placed upon record in the office of the register of mesne conveyance in the proper county more than forty years before this action was brought, is entitled to great weight, not such as obtains from a matter of record, as it is known in the law. The registry of deeds does not rank in this way ; for only judgments of courts of record when entered upon the records of such courts can claim this distinction, but we mean that notice is given by recording in the office of the registry of mesne conveyance, and especially *the deed from a vendor to a vendee.* By a deed of conveyance in fee simple the vendor separates himself from the land conveyed, and the vendee under such deed has no further connection with his vendor, the purchase money having been paid. Chief Justice Marshall, in *Blight's Lessee* v. *Rochester,* 7 Wheat., 535, very aptly brings this in view, when he says, at page 547 : "The propriety of applying the doctrines between lessor and lessee to a vendor and vendee may well be doubted. The vendee acquires the property for

himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title, unless he should be called upon, in consequence of some covenant or warranty in his deed. The property having become, by the sale, the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this, nor is either the letter or the spirit of the contract violated by it."

We have endeavored to make our meaning plain in regard to the effect of these deeds of conveyance in fee simple. We regard the first of such conveyances as a fraud upon the rights of the landlord, and as giving him a right of action to recover possession of such leased premises immediately after the execution of such deed, and that such right of action, if brought at any time within twenty years immediately following the execution of such deed, would have restored the land demised to the plaintiff-corporation. This brings us up squarely to the question, when was he bound to take notice of such deed? Unquestionably, if the fact of the execution of the deed had been brought to the actual attention of the plaintiff corporation at its date, he would have been so bound. But will not the possession be under the deed, and its being recorded in the office of the register of mesne conveyance for Greenville County, have a similar effect? We think so.

It was unfortunate for the plaintiff-corporation that the rent for the term was a sum in gross paid by the tenant at the beginning of the lease, for the reservation of a yearly rent of "one barley corn" was purely nominal. If the rent had been reserved to be paid annually, the landlord would have looked more closely after his rights in the premises. But the landlord and his tenant had the right to contract as they did, and if these misfortunes had not occurred, the landlord's right to have recovered the demised premises at the expiration of the lease (1890) would have been unquestioned. The grand object of the creation of the trustees into a body corporate was

to enable them all the more readily to discharge the trusts created by the will of Thomas Wadsworth, deceased. The corporation is liable under the law to sue and to be sued. They can recover their rights under the law as well as can private individuals, and they are as liable to lose those rights by a failure to sue as are private individuals, except as affected by statutes of limitations. This presumption would have matured against a private individual. So it will against such corporation. We must overrule all the grounds of appeal numbered respectively, 1, 2, 3, 4, 5, 6.

The appellant complains that the Circuit Judge should have granted a new trial. So far as this request of appellant relates to questions of fact, this court is powerless to interfere. So far as it relates to misconceptions of the law by the Circuit Judge, from what we have already said, no error is to be imputed to the judge.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN. Under the authority of the decided cases, I concur.

MR. CHIEF JUSTICE McIVER. I concur in the result reached in this case, though, I must confess, after much hesitation. It seems to me that, inasmuch as the grantor cannot convey any greater estate or interest than that which is vested in him, the several conveyances, purporting to be deeds in fee simple, operated only as assignments of the original lease to Walker; and hence the several holders under those deeds, including the defendant, held under that lease, and their possession was, therefore, permissive and not adverse. At least, this was so until some act was done amounting to a forfeiture of the lease, of which the plaintiff had notice more than twenty years before the commencement of this action. I was unable to see how the plaintiff could maintain an action against any one of the several holders of the land, before the termination of the lease, for all that the defendant would have to do in such a case would be to throw himself upon his rights as assignee of the lease, and thus defeat the action. But the case of the *Trustees of Wadsworth-*

*ville Poor School* v. *Meetze*, 4 Rich., 50, decides, as I understand it, that the lease to Rall "did not prevent the plaintiffs from suing the defendant, whose possession under the conveyance in fee simple from Rall was clearly adverse. The conveyance in fee simple was a disclaimer of Rall's tenancy, and the plaintiffs might sue without notice to quit, and before the termination of the lease," provided the plaintiffs had notice of such adverse holding. For it will be observed that the third instruction to the jury (affirmed by the Court of Appeals) was that "if Rall's possession was permissive, his declaration to Taylor (even if made after the supposed lease), that he would claim under the statute of limitations, could not convert his permissive possession into an adverse possession, without notice to the plaintiffs of such adverse holding." This case, therefore, is decisive of the point, and my doubts must yield to its authority.

Another point of doubt is the question of notice to the plaintiff that the several parties were claiming to hold the land adversely under the fee simple deeds. I do not think that the record of these deeds operated as constructive notice to the plaintiff, for, as I understand the rule, a party is bound to look up, but not down the line. As is said in 20 Am. & Eng. Enc. Law, 596: "The operation of the record as notice is prospective and not retrospective." Hence, as is there said: "A prior mortgagee cannot be charged with notice of, and cannot be affected by, a subsequent mortgage or deed by the mere record thereof." See, also, *Lake* v. *Shumate*, 20 S. C., 32, to the same effect. The jury having been instructed in accordance with this view, it then became a pure question of fact, as to whether the plaintiff had actual notice, and if they erred in their finding as to such fact, such error is beyond our reach. The remedy was by a motion before the Circuit Judge for a new trial, which seems to have been unsuccessfully resorted to. If, in fact, there was no evidence of such notice (which, I must say, seems to me was the case), then the Circuit Judge should have granted a new trial; but even if there was error in this respect, this court has often held that it was without jurisdiction to correct such error.

Judgment affirmed.

In this case a petition was filed praying for a rehearing. This petition was refused by an order filed January 20, 1894,

PER CURIAM.　After a careful examination of this petition, we are unable to discover that any material question of fact or principle of law has either been overlooked or disregarded, and, therefore, there is no ground for a rehearing.

For the purpose, however, of preventing any misconception as to the real ground upon which the decision rests, we deem it best to say that it is a mistake to suppose that the remarks made in the leading opinion, implying, possibly, that the recording of the fee-simple deeds might operate as constructive notice, constituted a ground for the result reached. These remarks were thrown out by the justice who prepared the opinion as an additional reason for the view taken, which, however, as shown by the remarks of the other two justices in concurring in the result, should not be regarded as one of the points decided in the case.　Petition dismissed.